## PERRY FRAZER

*v.*

## THE BOARD OF SUPERVISORS OF PEORIA COUNTY.

1. CONVEYANCE — *to one and heirs of her body.* A conveyance of land to an unmarried woman, to have and to hold unto her and the heirs of her body forever, vests in her an estate for life only, and creates a contingent remainder in favor of the heirs of her body who, when born, will take the absolute fee.

2. SAME — *tenant for life cannot defeat estate of remainderman.* A grantor who conveys to an unmarried woman real estate, to have and to hold to her and to the heirs of her body forever, thereby deprives himself of all estate but a contingent reversion, dependent upon the grantee dying without having had issue, and it is not in the power of the grantee, by a reconveyance before issue born, to defeat the contingent remainder in favor of such issue.

3. COVENANTS FOR TITLE. Where the owner of land conveys it to another and the heirs of her body forever, and the grantee, before having issue, reconveys to the grantor, he only acquires a life estate during the life of the grantee in the first deed, and if he again conveys the land with covenants that he is seized of a good, sure, perfect, absolute and indefeasible estate of inheritance in the law, in fee simple, his covenant is broken when made, and his grantee may sue and recover upon such breach, notwithstanding he may have been put into possession of the land under his deed.

4. MEASURE OF DAMAGES — *for breach of covenant of warranty.* Where there is a covenant in a deed of conveyance of real estate, that the grantor,

at the time of making the deed, was seized of a good, sure, perfect and absolute and indefeasible estate of inheritance in the law in fee simple, and the grantor has in fact only a life estate and a contingent reversion in the land, the grantee may, upon reconveying or tendering a reconveyance, sue and recover for breach of covenant, and in such case the measure of damages is the amount of the consideration named in the deed, together with taxes paid on the land, and interest, less the value of rents received or which could have been received by the grantee from the land.

WRIT OF ERROR to the Circuit Court of Peoria county; the Hon. JOSEPH W. COCHRAN, Judge, presiding.

Messrs. McCULLOCH, STEVENS & WILSON, for the plaintiff in error.

Messrs. JOHNSON & HOPKINS, for the defendants in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

Plaintiff in error brought an action of covenant against defendants in error. The evidence shows that William S. Moss was seized in fee of two lots in Peoria, and conveyed the same to defendants in error. An agreement as to the facts was made by the parties and the case submitted to the court, by consent, without a jury. It is agreed in substance that in December, 1854, Moss conveyed the lots to his unmarried daughter, Harriet W. Moss. The deed recites a consideration of one dollar and natural love and affection, and "to have and to hold the said premises, with the appurtenances, unto the said party of the second part, her heirs of her body, forever." She afterwards intermarried with Arthur H. Griffith.

Afterwards, in June, 1865, Griffith and wife reconveyed the premises to Moss, the father. The deed recites a consideration of one dollar. It recites that "the conveyance of the above and foregoing premises is hereby made in consideration of the said William S. Moss having heretofore, to wit, on the 30th day of December, A. D. 1854, conveyed, in consideration of one dollar together with natural love and affection, to the said Harriet

W. Moss, now Griffith, and before her said marriage, the above described premises, and subsequent arrangements having been made by which it is desirable to change said intended gift (the said conveyance of said William S. Moss to the said Harriet W. Moss, now Griffith, having been intended as a deed of gift) from said premises to other property, therefore this deed is made to revest the title to said premises in the said William S. Moss, in consideration of other property received in exchange, and to and for the same uses and purposes, the receipt of which said property is hereby acknowledged." This deed contained no covenants. The daughter at the time the stipulation was entered into had no children, and is still the wife of Griffith.

On the 5th day of March, A. D. 1867, Moss conveyed the premises to the county of Peoria. This deed contained full covenants. On the 20th day of April, 1867, the county of Peoria conveyed the premises to plaintiff in error, for the consideration of $5,700, and covenanted that the county was seized of a good, sure, perfect, absolute and indefeasible estate of inheritance in the law in fee simple ; that it had good right, full power and lawful authority to grant, bargain, sell and convey the same ; that the same was free and clear of and from all former and other grants, bargains, sales, liens, taxes, assessments and incumbrances. The plaintiff took possession under the deed and inclosed the same with a fence, but the same had been otherwise unoccupied during the time, and plaintiff had derived no profit therefrom and has paid taxes to the amount of $392.88, and still has possession. He paid the full value of the property except $1,250, for which he gave his note and a mortgage on the premises, and the note has been assigned to one Jack.

At a session of the board of supervisors, plaintiff tendered to the county a deed for the premises, and caused a notice to be served on them that inasmuch as the county had no title when they conveyed to him, and had afterwards acquired no title, he tendered the deed and offered to surrender

possession, and demanding a re-payment to him of the purchase money, with interest, taxes and costs of conveyance, but the board of supervisors refused to comply with the request.

Upon this agreement of facts the circuit court found for defendants, and rendered a judgment against plaintiff, to reverse which he prosecutes this writ of error.

It is conceded by all parties that Harriet took an unconditional life estate. But as to what became of the remainder of the estate the parties are not agreed. Defendants in error insist that Moss, the grantor, retained the fee to support the particular estate, liable to be defeated by the contingent remainder, on the birth of children of her body. And that until the birth of a child the grantor and the grantee, by uniting in a conveyance, could pass the entire absolute fee. Or where the grantee so conveyed to the grantor he became invested with an absolute fee and could convey it to whom he might choose. And hence the county took and conveyed a fee simple title, free from the contingent remainder.

On the other hand, it is contended that by virtue of the sixth section of our conveyance act the strict rules that obtained at the common law and under the statute *de donis* have been modified, and that under a deed of the character of that made by Moss to his daughter the grantee only takes an unconditional life estate, and the remainder, by force of the statute, vests in fee in the heirs already in being, or if there are no children of the body at the time, then the fee is in abeyance until a child is born of her body, when the remainder vests in the heir, subject to be defeated in part by the birth of other children, who at birth become invested with the fee to their share. And that under the 14th section of the same act, the fee having been limited in remainder to the children of her body, they would take at birth, whether they were in being at the time the conveyance was made or were born afterwards.

To see the force of these sections more clearly, and to appre-

ciate more fully their practical operation, it is perhaps neces-
sary to review to some extent the law on this subject as it
stood prior to the adoption of these statutory provisions.   At
the common law, a conveyance to a person and the heirs of
his body, whether generally or specially, created a conditional
fee, which was held to be performed and the fee vested upon
the birth of issue.   It was held that there was an implied con-
dition that if the donee should die without such heirs, the land
should revert to the donor.   This was a condition annexed to
all grants, by operation of law, that on the failure of the heirs
specified in the grant, the grant should be at an end and the
land return to the ancient proprietor.   2 Bl. Com. 110.   The
condition annexed to these fees by the common law, was held,
where it was to a man and the heirs of his body, to be a gift
on condition that it should revert to the donor if the donee
had no heirs of his body; but if he had, that it should remain
to the grantee.   Hence it was called a fee simple, on condition
that he had issue.   And when the condition was performed
by the birth of issue, the estate in the grantee became absolute
and unconditional.   And when the condition was thus per-
formed, the estate became absolute for at least three purposes.
First, to enable the grantee to alien the land, and thus to bar
both his own issue and the donor; second, to subject him to
forfeit it for treason ; and third, to empower him to charge
the land with rents, commons and certain other incumbrances.
2 Bl. Com. 111.   If after such performance of the condition
the grantee did not alien the land, and the heir died and then
the grantee died, the estate reverted to the donor.   To obviate
this reversion it was customary for the grantee, on the birth
of issue, to alien and then repurchase, so that he might become
vested with a fee simple absolute that would descend to his
heirs generally.   Ib.   This was the state of the law when par-
liament adopted the statute *de donis conditionalibus.*

The effect of that statute was, to prevent the grantee from
aliening, after birth of issue, so as to cut off or bar this estate,
which descended in like manner from generation to generation

to the class of heirs described in the deed to the first donee. But on failure of issue the land reverted to the donor. It was held that by this act the estate was divided into two parts, leaving in the donee a new kind of particular estate called a fee tail, and investing in the donor the ultimate fee simple in the land expectant on the failure of issue, which expectant estate is what is called a reversion. And it was obviously the purpose of the General Assembly, in adopting the sixth section, to prevent the tying up of titles in perpetuity by entails. This was manifestly the first purpose, and another was, to carry out the intention of the grantor in making the conveyance, that the land should go in remainder to the particular persons designated in the deed. The artificial and highly technical rules of the ancient common law are not known or understood by the people generally or by the great majority of persons who are called upon to prepare conveyances, and hence it was also the purpose of this statute to more effectually carry out the intention of the parties. But few understand the rule in *Shelly's Case*, which is defined to be, " In any instrument, if a freehold be limited to the ancestor for life, and the inheritance to his heirs, either mediately or immediately, the first taker takes the whole estate ; if it be limited to the heirs of his body, he takes a fee tail ; if to his heirs, a fee simple." 1 Preston on Estates, 263.

The sixth section of our conveyance act provides that where any person, under the common law, might become seized of land, etc., by any devise, gift, grant or conveyance, etc., in fee tail, such person, instead of becoming seized in fee tail, shall be deemed and adjudged to be and become seized thereof for his or her natural life only, and the remainder shall pass in fee simple absolute to the person to whom the estate tail would, on the death of the grantee, etc., in tail first pass, according to the course of the common law, by virtue of such devise, gift, grant or conveyance. The General Assembly must have intended to refer to estates tail created by the statute *de donis*. They speak of persons becoming seized of such estates by the

common law, when we have seen that estates tail grew out of the statute *de donis,* and not out of the common law. The object of our statute was, to convert the estate tail in the donee into an estate for life, and in the person who would first take under the grant into an estate in fee simple absolute, and thus cut off the reversion to the donor expectant on the failure of issue of the donee, of this class designated in the instrument conveying the land, and to vest the fee in the first taker.

It seems to us that this was the obvious purpose of the enactment. If, as is contended by defendants in error, the General Assembly intended to restore the common law as it stood before the adoption of the statute *de donis,* they would simply have repealed that statute, and left the donee with power, on the birth of issue, to alien the estate, and re-purchase, and thus cut off both the remainder and reversion. But this statute has accomplished the same end, effectually declaring that the person who would first take from the tenant in tail shall take a fee simple absolute, and expressly provided that the donee, in such a case, shall only have a life estate. We are at a loss to see in what manner the donee could possibly cut off the remainder, in the face of the statute, when it has unequivocally stated that the remainder-man shall become invested with an absolute fee, by operation of the deed or instrument creating the estate. To so hold would be in manifest violation of the express will of the General Assembly. This provision, we think, repels, in the most unmistakable manner, any and all inference that the donee might dock the remainder, or that the donor should ever have the reversion, except on failure of the issue, but that the estate in the heir of the body of the donee should take the fee untrammeled and free from all conditions whatever.

The last clause of the section, in declaring that the fee should pass according to the course of the common law, by virtue of the instrument creating the estate, is manifestly intended in the same manner as the reference to the common law in the first clause of the section. It could not have been intended to

so limit or qualify the provision as to the manner the heir should take, else other and very different language would have been employed. Had such been the intention, the General Assembly would no doubt have said that the heir, or person first taking from the donee, should take as at the common law, and before the statute *de donis,* and not that he should take an estate in fee simple absolute. In this mode and this alone can we harmonize the language of the statute and carry out its provisions.

Before the statute *de donis* the donee only took a conditional fee, subject to be defeated, and to revert to the donor in case of failure of issue of his body. These conditions our statute has effectually wiped out, as well as the tenure by fee tail, leaving no doubt or possibility of a reversion. And it is immaterial, as affects the estate thus created, whether we say that the statute has totally abolished estates tail, or whether we say they are abolished only after the first degree, as the operation of the statute is the same, and vests the absolute fee in the heir. *Butler* v. *Huestis,* 68 Ill. 594; *Voris* v. *Sloan,* ibid. 588; and *Blair* v. *Vanblarcum,* 71 Ill. 290. These cases hold that under such conveyances the heir, at birth, takes a fee simple.

If any thing further was necessary to show that such was the intention, although the fee might be in abeyance until the birth of the child, we think it is done by the fourteenth section of the conveyance act. It provides that " when an estate hath been, or shall be, by any conveyance, limited in remainder to the son or daughter, or to the use of the son or daughter of any person, to be begotten, such son or daughter, born after the decease of his or her father, shall take the estate in the same manner as if he or she had been born in the lifetime of the father, although no estate shall have been conveyed to support the contingent remainder after his death." Thus it is seen that the estate may, under this statute, be in abeyance, with no particular estate to support the remainder nor any person in being to take the inheritance until he comes into

being so that it can vest. From these enactments we are clearly of opinion that children born after the execution of the conveyance will take the remainder in fee, precisely in the same condition as though they were at the time in being. See *Blair* v. *Vanblarcum, supra.*

It then follows that Harriet took only a life estate by the deed from her father, and that by the deed a contingent remainder was created in favor of the " heirs of her body," who, when born, will, under the statute, take the absolute fee. And by force of the same statute, Moss deprived himself of all estate but a contingent reversion, and when he conveyed to the county nothing passed but the life estate of Harriet which he had acquired, and this right to the expectant reversion. He had and could not have the fee, and hence could not convey it to his grantee. He could, of course, convey no greater estate than he held. Should Mrs. Griffith die without having had issue, then the title would no doubt revert to Moss, if living, or, if dead, to his heirs, and if there are proper covenants in his deed to the county, the fee would then inure to the benefit of the county, and he or his heirs would be estopped to claim the property. But that event has not occurred, and hence the county did not have the fee.

It then follows that there was a breach of the covenant that the county was seized of a good, sure, perfect, absolute and indefeasible estate of inheritance, in the law, in fee simple, and of the covenant that the premises were free and clear from all former grants, bargains and sales. We have seen that he did not own the premises in fee, but had, by a former sale, divested himself of the fee simple title, and had not regained it. And these covenants, being in the present tense, have been always held to be broken, if at all, on the delivery of the deed. They are unlike the covenant for peaceable enjoyment or of general warranty, which are covenants to be performed in the future, and are only to be broken by eviction. Nor is the covenant answered by placing the grantee in possession. That

is a seizin in fact, while the covenant is that the county was seized, in law, of the fee.

The plaintiff in error did not intend to purchase any thing less than the fee, nor did the defendant covenant that it had sold any thing less. He did not purchase a mere possession or right of possession. Nor did he intend to purchase a mere life estate. And shall he be told that, although he intended to purchase, and the county intended to sell him the fee, and covenanted that they had, he must be content with a life estate? That although he paid the full price of the land with perfect title, he must be satisfied with only a life estate worth perhaps not one-tenth of the sum he paid? Shall it be said that, being let into possession under a mere life estate, the covenant of lawful seizin in fee is answered? We think not, though some courts seem to so hold. In the cases of *Brady* v. *Spurck*, 27 Ill. 482, *King* v. *Gilson*, 32 ib. 348, and *Baker* v. *Hunt*, 40 ib. 264, it was held that if there is a breach of the covenant of seizin it is at the delivery of the deed. This, then, is repugnant to the notion that a mere seizin in fact answers the covenant of seizin, as the breach occurs at or before possession is or can be delivered.

It remains to determine what is the measure of damages. We can see no reason why plaintiff in error should not recover the purchase money he has paid, with interest; also, all taxes he has paid on the premises. The covenant being broken, and failing to obtain the title he purchased, he had only to tender a deed reconveying all the interest he had acquired from the county, and then recover what he had paid for and on account of the purchase of the lots. If the county has negotiated any of his notes for the purchase money, it must, of course, either take up and surrender the security or pay plaintiff in error to take it up, so as to become released from liability thereon. The title purchased did not pass, and on a recovery both parties should be placed *in statu quo*. The county should have restored to it all the title it conveyed, and plaintiff in error all money paid, with interest, and all taxes paid, and

with a deduction therefrom for all rents and profits which have been or could have been received from the property. This is reasonable, just and proper as the measure of damages. And whether he may recover for notes negotiated by the county must depend upon whether the county shall release and discharge him from liability on the same.

The judgment of the court below is reversed, and the cause remanded.

*Judgment reversed.*