ROLLAND MOORE *et al.* Plaintiffs in Error, *vs.* HERMAN L. REDDEL *et al.* Defendants in Error.

*Opinion filed June 18, 1913.*

1. REAL PROPERTY—*intention of the legislature in enacting section 6 of the Conveyances act.* The manifest intention of the legislature in enacting section 6 of the Conveyances act was to get rid of estates tail, and not to revive conditional fees with power in the life tenant to alien on the birth of issue and re-purchase so as to obtain a fee title, and to substitute for the fee tail a life estate in the grantee, with remainder in fee simple to those who would take such remainder by the terms of the grant. (*Frazer* v. *Supervisors of Peoria County,* 74 Ill. 282, followed.)

2. SAME—*effect of deed to person for life with remainder to the heirs of his body.* Under section 6 of the Conveyances act, as construed since its passage, a deed to a named person for life, with remainder "to the heirs of his body," passes a life estate to such person, and if he has living issue at the time the conveyance is made the remainder in fee vests in them at once, subject to being divested *pro tanto* in case other children are born; and if there is

no living issue at the time of the conveyance the remainder is contingent only until a child is born, when it becomes vested.

3. SAME—*remainder to heirs of life tenant's body is not contingent until his death.* A remainder to the heirs of the life tenant's body does not remain contingent until his death, upon the theory that no living person can have heirs, but the remainder in such case vests in the children of the life tenant as they are born, and may be conveyed by them or will descend to their heirs the same as any other fee.

WRIT OF ERROR to the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

T. FRED LARAMIE, and ODE L. RANKIN, for plaintiffs in error:

An heir is one on whom the law casts the inheritance upon the decease of the ancestor. A remainder limited to the heirs of a living person is a remainder limited to one who is not yet in existence. 2 Fearne on Contingent Remainders, sec. 383.

A remainder limited to the heirs of a living person falls within the description of, and really is, a contingent remainder. 2 Fearne on Contingent Remainders, sec. 285.

A devise to the first taker expressly for life, with a limitation to the heirs of his body, creates an estate entail in the first taker. 2 Washburn on Real Prop. sec. 1604.

Remainders limited to heirs and heirs of the body are contingent remainders. *Insurance Co.* v. *Hoppin,* 249 Ill. 413; *McCartney* v. *Osburn,* 118 id. 415; *Putnam* v. *Story,* 132 Mass. 305; *Horsley* v. *Hilburn,* 44 Ark. 458; *Kelso Estate,* 69 Vt. 272.

Where there is a contingency incorporated into the description of the remainder-man the remainder to such remainder-man is contingent, as where the remainder is to heirs or heirs of the body. *Robertson* v. *Guenther,* 241 Ill. 511.

If the contingency is in the person who is to take, as where the remainder is limited to the heirs of one alive,

there is no one who can make an effectual grant or devise of the remainder. It is contingent. A contingent remainder is a mere possibility—not an estate. 2 Washburn on Real Prop. secs. 1555, 1557.

The law does not permit the tenant in tail to purchase the reversion in fee and merge his particular estate and defeat the inheritance of his issue. (2 Blackstone's Com. *177, 178.) Nor should the tenant in tail be permitted to join with the heir apparent and convey to third persons, as he may re-purchase and defeat the issue.

A guardian's deed will not pass the contingent remainder of his ward. *Hays* v. *Tabor,* 41 N. H. 521; *Horsley* v. *Hilburn,* 44 Ark. 458.

The deed of a contingent remainder-man passes nothing and does not bind his heirs. *Strode* v. *McCormick,* 158 Ill. 142; *Robeson* v. *Cochran,* 255 id. 355.

The warranty deed of a contingent remainder-man will pass his own after-acquired title. *Robeson* v. *Cochran,* 255 Ill. 355.

The rule in *Shelley's case* was not abolished, by section 6 of the Conveyance act, as to estate's tail, as it is necessary to determine by the rule, in some forms of conveyance, whether a fee tail has been conveyed at common law.

Section 6 of the Conveyance act never was intended to change the mode of descent but was passed to cut off the perpetuity. It simply cuts down the entail to the first takers in fee instead of in tail.

JOSEPH W. FIFER, for defendants in error:

When property in this State is conveyed to A for life with the remainder to the heirs of his body, the words "heirs of the body" will be regarded as words of purchase and not of limitation, and the first taker will take only a life estate, and the heirs of his body will take the remainder in fee as soon as they come into being after the delivery of the instrument of conveyance. It will, however, open from

time to time to let in after-born children of the life tenant. *Voris* v. *Sloan,* 68 Ill. 588; *Butler* v. *Huestis,* 68 id. 594; *Blair* v. *Vanblarcum,* 71 id. 290; *Frazer* v. *Supervisors,* 74 id. 282; *Lehndorf* v. *Cope,* 122 id. 317; *Welliver* v. *Jones,* 166 id. 80; *Atherton* v. *Roche,* 192 id. 252; *Peterson* v. *Jackson,* 196 id. 40; *Dick* v. *Ricker,* 222 id. 413; *Turner* v. *Hause,* 199 id. 464; *Smith* v. *West,* 103 id. 332; *Din-widdie* v. *Self,* 145 id. 290; *Kyner* v. *Boll,* 182 id. 171.

A remainder does not vest during the continuance of a precedent or collateral contingency. *Boatman* v. *Boatman,* 198 Ill. 414; *Chapin* v. *Nott,* 203 id. 341; *Golladay* v. *Knock,* 235 id. 412.

The first two of these cases held the contrary, but in *Golladay* v. *Knock* those cases were overruled in this par-ticular only, and in other respects they were affirmed. To the same effect see *Robertson* v. *Guenther,* 241 Ill. 511, and *Haward* v. *Peavey,* 128 id. 430.

Where the persons who are to take under the limitation over are described as the heirs of B, although, strictly speaking, no one is the heir of a living person, yet a devise to the heirs of a person named (who is a living person, and is so recognized in the will,) describes with sufficient certainty the persons intended, and shows that the word is not used in the strict sense but as meaning the heirs apparent of the person or persons who would be his heirs were he dead when the devise takes effect. *Barber* v. *Railroad Co.* 166 U. S. 108; *Doe* v. *Considine,* 6 Wall. 458; *Tindall* v. *Tindall,* 66 S. W. Rep. 1092.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The record in this case presents the question whether the remainder limited by a deed from Joshua Brown to the heirs of the body of his son, Marshall Brown, was vested in the children of the grantee before his death or was con-tingent, and the decision depends upon the following facts:

On October 5, 1881, Joshua Brown executed the deed conveying the real estate, from and after his death, to Marshall Brown, "to have and to hold to him, the said Marshall Brown, for and during the term of his natural life, but without power to sell, alienate, mortgage or in any manner encumber said estate or render same liable for the debts of said Marshall Brown, with remainder to the heirs of the body of said Marshall Brown and their assigns forever." Joshua Brown died in 1897 and Marshall Brown took possession of the land. Marshall Brown was married and was the father of the following named children: Ida R. Moore, Elsie B. Hauptman, Flora Williams, Jessie Brown, Russell Brown, William H. Brown and Marshall F. Brown, Jr. On February 14, 1901, Marshall Brown and his wife, Ida R. Moore and husband, Elsie B. Hauptman and husband, Flora Williams and husband, Jessie Brown, Russell Brown and William H. Brown, executed their warranty deed of the premises to William E. McReynolds for a consideration of $13,600. Marshall F. Brown, Jr., was a minor fifteen years of age, and the grantors in the deed to McReynolds covenanted with him that they would cause the interest of the minor to be conveyed to him by proceedings in the county court of McLean county. Sarah L. Brown, mother of Marshall F. Brown, Jr., was his guardian, and by proceedings in the county court his interest in the land was conveyed to McReynolds by a guardian's deed dated April 16, 1901, for a consideration of $1101. On June 10, 1907, Ida R. Moore died intestate in the lifetime of her father, Marshall Brown, leaving Charles H. Moore, Rolland Moore and Florence Moore, her children, the heirs of her body. November 27, 1907, Marshall Brown died, leaving Elsie B. Hauptman, Flora Williams, Jessie Brown, Russell Brown, William H. Brown and Marshall F. Brown, Jr., his only surviving children, and the three grandchildren above mentioned, children of Ida R. Moore. These were the persons answering the description of heirs of the body of Marshall

Brown at the time of his death. On November 25, 1904, McReynolds and wife conveyed the property, by warranty deed, to Herman L. Reddel, one of the defendants in error, and the other defendant in error, George Sierks, is his tenant. On October 9, 1911, the plaintiffs in error, Rolland Moore, by his next friend, Florence Moore, by her next friend, Charles H. Moore and Marshall F. Brown, Jr., filed their bill in the circuit court of McLean county against defendants in error for partition of the land, each claiming an undivided one-ninth interest and admitting that the defendant in error Herman L. Reddel was the owner of the remaining five-ninths. They claimed the four-ninths on the following grounds: (1) That the deed of Joshua Brown vested an estate for life in Marshall Brown, with remainder in fee simple to such persons as should at his death be alive to answer to the description of heirs of his body; (2) that the remainder to the heirs of the body of Marshall Brown was contingent until his death and never vested in Ida R. Moore, who died prior to his death, so that her warranty deed conveyed nothing when made and was not operative to convey after-acquired title because the title never vested in her; (3) that the guardian's deed conveyed nothing, because the remainder to Marshall F. Brown, Jr., was contingent and vested only upon the death of the life tenant. The chancellor sustained a demurrer to the bill, and the plaintiffs having elected to stand by the bill it was dismissed for want of equity, at their costs.

Counsel for plaintiffs in error admit that this court has decided in a series of cases covering a period of forty years, that under section 6 of the Conveyance act the remainder under any devise, gift, grant or other conveyance which would have created an estate in fee tail by the common law, vests in fee simple in the children of the life tenant in his lifetime and descends to other heirs the same as any other fee, and that the rule was re-affirmed as recently as the case of *Ætna Life Ins. Co.* v. *Hoppin*, 249 Ill. 406. They in-

sist, however, that in some of the cases a decision of that question was not necessary, in others that the decision was wrong, and in still others that the reversion in the grantor which descended to his heirs was mistaken for a remainder in the heirs and treated as such. Whether any of the decisions might have been based on different grounds, or whether, when the question was presented, plausible arguments on both sides might have been made, the rule has been established by numerous decisions, and having been relied upon by attorneys and conveyancers in drawing wills and deeds as establishing a rule of property, ought not now to be changed. We do not regard the decisions, however, as being without good foundation in reason and in view of the history of the law concerning similar titles, and perhaps it will be worth while to again consider such history briefly.

Prior to the statute of Westminster the Second, estates in fee limited to particular heirs, exclusive of others, as heirs of the body, were known as conditional fees, by reason of the condition expressed or implied that if the donee died without such particular heirs the land should revert to the donor. As soon as the donee had a child born his estate was absolute by performance of the condition, so far as to enable him to alienate the land and bar both his issue and the reversion. Upon the birth of issue he alienated the land and re-purchased, thus obtaining a fee simple that would descend to his heirs general, according to the course of the common law. To put a stop to this practice the statute *de donis conditionalibis* above mentioned, under which estates tail were created, was passed. That statute enacted that from thenceforth the will of the donor should be observed, and that the tenements given to a man and the heirs of his body should at all events go to the issue if there were any, or if there were none, should revert to the donor. The judges then created a new kind of estate, denominated a fee tail, which would descend to the particular heirs, while the donor had a reversion expectant on the failure of issue.

About two hundred years after the enactment of this stat-
ute it was decided in *Taltarum's case* that estates tail were
barred by common recovery, by which the tenant in tail
could dispose of the land for the purpose of defeating the
entail.

The argument for the plaintiffs in error rests upon the
ground that the remainder to the heirs of the body in such
fee tail estate at the common law was contingent by virtue
of the maxim that no living person has heirs. Counsel con-
tend that the purpose of the General Assembly in enacting
section 6 was to cut off the entail beyond the first degree
but not to change the character of the remainder; that the
estate was to pass according to the course of the common
law, and that the individuals composing the heirs of the
body could only be ascertained upon the death of the life
tenant.

The statute concerning conveyances was enacted Janu-
ary 31, 1827, and as revised appeared as chapter 24 of the
Revised Statutes of 1845, and section 6 was repeated in the
same language in chapter 30 of the Revised Statutes of
1871-72. The manifest intention of the General Assembly
was to get rid of estates tail and not to revive conditional
fees, with power of the life tenant to alien on the birth of
issue and re-purchase so as to obtain a fee simple, and to
substitute for the fee tail a life estate in the grantee, with
remainder in fee simple to those who would take such re-
mainder by the terms of the grant. Whenever the estate
vested in fee simple the reversion in the grantor would be
defeated, since such reversion could only exist while the
remainder was contingent. The language employed was
that the remainder should pass in fee simple absolute to the
person or persons to whom the estate tail would, on the
death of the first grantee, devisee, donee in tail, first pass
according to the course of the common law, by virtue of
the devise, gift, grant or conveyance. When the question
came before the court it was clear that this provision could

not be construed according to the words used, and that the General Assembly never intended that the remainder should pass to the person or persons to whom an estate tail would have passed according to the course of the common law. By the canons of descent, if there were two or more males in equal degree, the eldest, only, would inherit to the exclusion of the other sons and the daughters, and all rules of primogeniture had been expressly rejected by statute. Neither could it be said to be the intention that the remainder should pass to the heirs-at-law of the life tenant according to the course prescribed by the statute for the descent of intestate property, which would defeat the intention of the grantor in the limitation to particular heirs. In doing away with estates tail it could not have been the intention to restore the law as it was before the passage of the statute under which they were created, making the estates conditional fees. If that had been so, the General Assembly would merely have repealed the statute *de donis*. (*Frazer* v. *Supervisors of Peoria County,* 74 Ill. 282.) Entailed estates, limiting the inheritance from generation to generation with a reversion in the grantor and his heirs expectant upon the failure of issue, were regarded as an evil to be abolished, and conditional fees had been abolished because they defeated the intention of the grantor through the power of alienation. To restrict the first taker to a life estate and vest the fee in the issue when capable of taking the estate would not be open to either objection. Inasmuch as the language of the act could not be adopted as expressing the legislative intent, it was not unreasonable to hold that the purpose of the act was to provide that issue which was in existence at the time of the grant or should be born afterward should be invested with the fee simple and the reversion in the grantor be destroyed. That such conclusion was in harmony with the legislative will may fairly be inferred from the fact that the General Assembly, having power to make a change, has not done so.

There are many cases where the question was involved and the decision of it necessary. In the case of *Butler* v. *Huestis,* 68 Ill. 594, the will by which the testator exercised a power of appointment devised property to Altieri A. Huestis for her natural life, "the reversion or fee thereof to the heirs of her body at and after her decease." The court said that the estate was devised in tail; that section 6 of the Conveyance act applied to the devise, and that the fee vested immediately in the children of the life tenant although the enjoyment of the estate was postponed until "at and after the decease" of the life tenant. The court said that the words "heirs of her body" might with great justness be regarded as words of description, simply designating the children, but the statute was actually applied, and if there was anything said not necessary to the decision it was the statement with regard to the words as words of description.

In *Voris* v. *Sloan,* 68 Ill. 588, George Morton conveyed to trustees premises to be held in trust for the benefit, use and behoof of his daughter, Christiana Morton, and the heirs of her body forever, and in case she should die without issue, then the legal title was to revert to the party of the first part or his heirs. The circuit court decreed a life estate in Christiana, with remainder in fee to Elizabeth and Sophia Sloan, her children. This court held that each child at birth took an equal fee in the premises, and that the interests of two children who had died descended, under the Statute of Descent, to the mother and two living children.

In *Frazer* v. *Supervisors of Peoria County, supra,* William S. Moss conveyed lots to his daughter and the heirs of her body. She was not married but was afterward married, and she and her husband re-conveyed the property to Moss. The court held that by virtue of the statute the grantee took a life estate and the remainder would vest in a child whenever it might be born.

*Lehndorf* v. *Cope,* 122 Ill. 317, was a bill to foreclose a purchase money mortgage made by one who held title under a deed which conveyed the property to her and her heirs by her present husband. There were two children who answered the description in the deed, and the court held that the remainder vested immediately in them in fee, subject to the possible contingency of being divested *pro tanto* by the birth of after-born children answering the same description.

In *Welliver* v. *Jones,* 166 Ill. 80, the devise was to the testator's wife and her heirs by him. He was survived by his wife and one child. The child died intestate, leaving her mother and half brothers and sisters her heirs-at-law. The court followed the previous decisions and held that the child took title to the remainder in fee simple, which vested in her at the death of the testator, and descended, upon her death, to her heirs. That was not the first case where the doctrine that the fee is descendible was declared, as the same doctrine was applied in *Voris* v. *Sloan, supra.* Afterward, in *Kyner* v. *Boll,* 182 Ill. 171, a deed had been made to Jennie Kyner and her bodily heirs. The purpose of the suit was to reform that deed by striking out "bodily" wherever it occurred. The deed was made on October 20, 1862, and on July 18, 1863, a child, Eugene Kyner, was born to Jennie Kyner and lived until July 28, 1864, when it died. It was held that when the child, Eugene, was born, he took, under the terms of the deed, an estate in fee simple, subject to the life estate of his mother, and subject, also, to be opened to let in after-born children of his mother, who would be tenants in common of the fee with him, and that when the child, Eugene, died before the birth of another child, the fee so vested in him passed to his father and mother as his heirs-at-law, subject to be divested *pro tanto* to let in after-born children.

These are a few of the cases where the question here involved was directly and necessarily considered and de-

cided and where it legitimately arose on the record. They, with other cases, must be regarded as conclusively settling the rule that if there is living issue at the time a conveyance like this one is made, the remainder in fee vests in them at once, and if there are no children living, the remainder is contingent only until the birth of issue, when the remainder will vest. It follows that the deed of Ida R. Moore conveyed her interest in fee and that the guardian's deed conveyed the interest of Marshall F. Brown, Jr.

The decree is affirmed.                    *Decree affirmed.*