JENNIFER CORRINNE DEMPSEY *et al.*, Plaintiffs and Counter-defendants-Appellees, v. IAN RANN DEMPSEY, Defendant and Counterplaintiff-Appellant.

Third District    No. 3—02—0816

Opinion filed August 18, 2003.

Sean M. Anderson (argued) and Dean B. Rhoads, both of Sutkowski &

Rhoads, Ltd., of Peoria, and Kristin L. Cantu (argued), of McDermott, Will & Emery, of Chicago, for appellant.

Jeffrey G. Sorenson (argued) and Janice M. Powell, both of Howard & Howard Attorneys, P.C., of Peoria, for appellees.

JUSTICE LYTTON delivered the opinion of the court:

Plaintiffs, Jennifer and Kevin Dempsey, and defendant, Ian Dempsey, are the only surviving descendants of David Dempsey (David). Shortly after David's death, both parties petitioned the circuit court to determine their interests in certain real property devised in his father Ralph Dempsey's will. The circuit court found that the conveyance created a contingent remainder in David's heirs, which vested upon his death. Defendant appeals, arguing that the remainder vested upon Ralph Dempsey's death and that he is entitled to a larger share of the estate. We affirm.

## FACTS

Ralph Dempsey died in 1956, leaving a will dated October 19, 1955. Article fifth of the will provided:

"I give and devise all the real estate owned by me in Fulton County, Illinois, (approximately 240 acres) as follows:

(a) A life estate to my wife, Gertrude L. Dempsey.

(b) After the death of my said wife, Gertrude L. Dempsey, a joint life estate to my son, David Dempsey, and his wife, Evangeline Dempsey, and for the lifetime of the survivor thereof.

(c) The remainder interest in said real estate, I give and devise to the heirs of the body of my son, David Dempsey, share and share alike, and in fee simple."

When Ralph Dempsey died, David had three children: Ian, Karen, and David Kevin. Ralph's wife Gertrude died in 1961, leaving David and Evangeline Dempsey with a life estate in the property. David Kevin died in 1981 and was survived by plaintiffs Kevin and Jennifer Dempsey, his two adopted children. Evangeline Dempsey died in 1984. Defendant's sister Karen died in 1998 and devised her estate to Ian. David died in 1999, prompting this dispute over the will. Plaintiffs and defendant are the only surviving interested parties.

Plaintiffs filed a complaint for "declaration of rights" under Ralph's will. Defendant filed a motion for summary judgment. The court denied Ian's motion and ordered the remainder interest distributed *per stirpes* to plaintiffs and defendant, with defendant to take a one-half interest and plaintiffs to take an undivided one-half interest.

## ANALYSIS

■ The trial court determined the parties' rights as a matter of

law, and we review its decision *de novo*. *Arangold Corp. v. Zehnder*, 204 Ill. 2d 142 (2003).

Defendant argues that Ralph Dempsey's will created a fee tail estate in David. Defendant notes that section 6 of the Illinois Conveyances Act converts the fee tail into a life estate in David that, upon Ralph's death, vested in David's living children. See 765 ILCS 5/6 (West 2000). Thus, defendant would be entitled to his one-third share and the one-third share Karen conveyed to him upon her death, leaving plaintiffs with an undivided one-third share.

Plaintiffs respond that section 6 of the Illinois Conveyances Act does not apply, that the remainder interests created by the will were contingent, and that they vested upon the death of the life tenant, David. Because Karen predeceased David, plaintiffs assert that she never had a vested remainder interest to convey to defendant and the trial court correctly divided the property. We agree.

## I. The Fee Tail Estate

█ At common law, a fee tail was an estate of inheritance that descended to the heirs of a donee's body, or to a class of those heirs, and through them to like heirs in a direct line. *Nave v. Bailey*, 329 Ill. 235, 240 (1928). The estate continued in a regular order and course of descent for as long as the heirs or class existed. Upon extinction of the specified issue, the estate terminated and reverted to the grantor. *Nave*, 329 Ill. at 240.

To better understand this dispute, it may be helpful to review a brief history of the fee tail. In medieval times, when land ownership was the key to acquiring and maintaining wealth, powerful families sought a vehicle to permanently keep the land in the family, which would allow the primogenitary heir to control it, but would also prevent him from alienating the land. Landowners could create such an estate by conveying land "to A and the heirs of his body." J. Dukeminier & J. Krier, Property 205 (4th ed. 1998).

The courts interfered, however, and decided that if issue were born to A, A could take a fee simple, thereby cutting off his issue's inheritance rights in the land. C. Moynihan, Real Property 38 (1962). The estate became known as a fee simple conditional—conditional upon having issue. J. Dukeminier & J. Krier, Property 205 (4th ed. 1998).

After being pressured by wealthy landowners, Parliament replaced the fee simple conditional with the fee tail. The fee tail caused land to descend to the grantee's heirs generation after generation, and only expired when the grantor, the grantee, and all of the grantee's descendants were dead. The statute then provided that land would

then revert to the grantor's heirs, or to another grantee if specified in the original conveyance. The fee tail required use of familiar language: "to [A], and the heirs of his body." J. Dukeminier & J. Krier, Property 205 (4th ed. 1998).

Property law in colonial America closely resembled English law, but revolutionaries such as Thomas Jefferson resented the fee tail as a symbol of the hereditary aristocracy perpetuated by the rule of primogeniture in England. J. Dukeminier & J. Krier, Property 207 (4th ed. 1998). Opposition to the fee tail grew in the decades following the American revolution. Throughout the nineteenth century, many states enacted legislation that abolished the fee tail estate. C. Moynihan, Real Property 41-43 (1962). The Illinois legislature abolished the fee tail in 1827 when it passed the Illinois Conveyances Act (now see 765 ILCS 5/1 et seq. (West 2000)). See *Moore v. Reddel*, 259 Ill. 36, 43 (1913).

## II. The Illinois Conveyances Act

■ Section 6 of the Illinois Conveyances Act provides that when a grantee takes an ownership interest that would have been a fee tail at common law, the estate is statutorily converted into a life estate in the grantee, with the remainder in fee to the grantee's children. 765 ILCS 5/6 (West 2000). If the grantee has no children, the remainder is contingent until a child's birth. If the grantee already has children, the remainder is vested, subject to reopening for any after-born children. *Doney v. Clipson*, 285 Ill. 75 (1918).

Here, we must determine whether Ralph Dempsey's will would have created a fee tail at common law. If so, section 6 of the Illinois Conveyances Act would apply, and the remainder would have vested upon the birth of David's children; in that case, Karen Dempsey's devise of her interest to defendant would have been a valid transfer of her one-third share. If no fee tail is created, then section 6 does not apply and common law controls the time at which the remainder vested.

■ Ralph Dempsey's will devised his estate "to the heirs of the body of my son *** share and share alike, and *in fee simple*" (emphasis added). The addition of these last three words destroys the possibility of creating a fee tail. *Peters v. Gebhardt*, 6 Ill. 2d 534, 544 (1955); *Benson v. Tanner*, 276 Ill. 594, 596 (1917). The fee tail prevented any "tenant in tail" from cutting off the rights of other issue or the original grantor. By giving his descendants a fee simple estate, Ralph Dempsey forfeited the absolute right to reverter. *Peters*, 6 Ill. 2d at 544. Thus, contrary to the premise of the fee tail, his descendants had the power to cut off the rights of their issue and the right of reverter

in the original grantor. By conveying the estate in fee simple, no matter how far down the lineal chain the conveyance may be, the fee tail is destroyed.

Because the estate is not a fee tail created by common law, section 6 of the Illinois Conveyances Act does not vest the estate upon the birth of David's children.

### III. The Remainder at Common Law

Absent application of the fee tail estate and the Illinois Conveyances Act, we are left with the plain language of the will. The devise gives a life estate to David, with the remainder to the heirs of his body in fee simple. To determine whether that remainder is contingent or vested, we look to the common law. *Aetna Life Insurance Co. v. Hoppin*, 249 Ill. 406 (1911)

■ A remainder is contingent when it is conditioned upon the happening of an event. *Oak Park Trust & Savings Bank v. Baumann*, 108 Ill. App. 3d 322 (1982). Since no one can be the heir of a living person, heirs cannot be ascertained until that person's death. *People v. Emery*, 314 Ill. 220, 225 (1924). In other words, becoming an heir is contingent upon the death of the ancestor. Consequently, the terms "heirs of the body" must create a contingent remainder:

> "Future estates, unlike present interests, may be limited to persons who are not ascertained or who are not even in existence, provided there is a present particular estate to sustain the remainder and the grantee shall be in existence when the time arrives for the enjoyment of the estate. Such an estate is a contingent remainder ***. *A conveyance for life with remainder to the heirs or heirs of the body of a living person creates a contingent remainder.*" (Emphasis added.) *Aetna Life Insurance Co.*, 249 Ill. at 413-14.

Illinois courts have consistently construed the remainder to be contingent when the fee tail does not apply. See *Aetna*, 249 Ill. at 415 (holding that when the devise is uncontrolled by statute and the remainder is conveyed to the heirs of a person's body, the remainder is contingent until that person's death, at which time heirs can be ascertained); see also *Spicer v. Moss*, 409 Ill. 343 (1951).

■ Defendant argues that two Illinois Supreme Court cases, *Barker v. Walker*, 403 Ill. 302 (1949), and *Moore v. Reddel*, 259 Ill. 36 (1913), support his contention that the remainder vested upon the birth of David's first child. In reviewing conveyances similar to the one here, *Barker* and *Moore* both held that the remainder vested upon the birth of the grantee's first child. However, both cases were decided within the context of section 6 of the Illinois Conveyances Act. In this case, we have already determined that the conveyance is not subject to the restrictions of section 6. Thus, *Barker* and *Moore* do not control.

The remainder is contingent and vested upon David's death. At the moment of David's death, his heirs were determined. The trial court correctly ruled that the estate be distributed *per stirpes*, with defendant taking a one-half share, and plaintiffs, through their father, taking a one-quarter share each.

### IV. The Presumption in Favor of Early Vesting

■ Defendant also urges this court to reverse the trial court based on Illinois's presumption in favor of early vesting of future interests. This presumption only applies, however, if a later time for vesting is not apparent from the express provisions of the will. *Colgan v. Sisters of St. Joseph of Carondelet*, 237 Ill. App. 3d 579 (1992). Our supreme court has stated that a conveyance for life with remainder to heirs of the body of a living person creates a contingent remainder. *Aetna*, 249 Ill. 406. Thus, in this case, the remainder is contingent as a matter of law and does not vest until the grantee dies and the heirs can finally be determined. We need not look to presumptions to reach the correct result.

### CONCLUSION

The judgment of the circuit court of Tazewell County is affirmed.

Affirmed.

McDADE, P.J., and SCHMIDT, J., concur.