NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 200551-U

NO. 4-20-0551

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 15, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| STACY ROSEBERRY, WILLIAM B. HILLEBRENNER, and LEECIA HILLEBRENNER, | ) ) | Appeal from the Circuit Court of |
| Plaintiffs-Appellees, | ) | Pike County |
| v. | ) | No. 18L13 |
| FEROL D. HILLEBRENNER, Individually and as | ) | |
| Executor of the Estate of Thomas E. Hillebrenner, | ) | Honorable |
| Deceased, | ) | Timothy J. Wessel, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Presiding Justice Knecht and Justice DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed the trial court's entry of summary judgment in favor of plaintiffs because (1) the devise in decedent's will contained words of purchase and not words of limitation and (2) assuming the Rule in Shelley's Case would otherwise apply, Illinois statutory law prevents its application in this case.

¶ 2    In the legal profession, few things strike fear in the hearts of attorneys like arcane principles of property law. The rule against perpetuities, for example, is something every lawyer is taught, but precious few ever learn. And even those who do wouldn't be able to define it if a guest asked them to at a dinner party. But even more nerve-racking is future interests and anything entitled "the Rule in ____'s Case."

¶ 3    English common law applicable to transfers of property contains all of the things the modern legal system abhors: magic words, hypertechnical interpretation, and inflexible rules.

Fortunately, legislatures have abolished the most prominent and complicated of these rules. But every so often, Oliver Wendell Holmes Jr.'s quote comes to life: "It is revolting to have no better reason for a rule of law than that *** it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past." Nonetheless, our burden in this case is to determine whether the infamous "Rule in Shelley's Case" applies to the facts before us. The short answer is it does not.

¶ 4                                                    I. BACKGROUND

¶ 5             Decedent, Henry Hillebrenner, created his last will and testament in January 1948, a few months before he died. Henry made precious few gifts, but when he did, he used all of the legal jargon that bespeaks of English common law. At issue here is his devise to Thomas Hillebrenner of 380 acres of farmland (the property), written as follows:

> "to have and hold for the lifetime of the said Thomas ***, and on the death of said
> Thomas ***, to the heirs of his *** body that are living at the time of the death of
> said Thomas."

¶ 6             At first glance, it appears clear what Henry wanted to do—namely, he wanted to give Thomas real estate to use during his lifetime, and when Thomas died, the remaining interest in the real estate would pass on to Thomas's biological descendants. But Thomas's widow, defendant Ferol D. Hillebrenner, argues the Rule in Shelley's Case should operate to give Thomas both the life estate and the remainder—in short, fee simple title to the property. If that were the case, when Thomas died in 2017, Ferol would have inherited the property because Thomas's will left everything he owned to her.

¶ 7        In October 2018, Thomas's biological heirs, Stacy Roseberry, William B.

Hillebrenner, and Leecia Hillebrenner (plaintiffs), filed suit to quiet title in the real estate and

enforce the terms of Henry's will. In October 2020, the trial court agreed with plaintiffs and

entered summary judgment in their favor. Ferol appeals, arguing that the trial court erred when it

declined to apply the Rule in Shelley's Case. After an exhausting review of the law of future

interests (which we do not recommend as a fun endeavor), we conclude that the trial court's

decision was correct and affirm.

¶ 8        Henry executed a will in January 1948, the relevant portion of which states, in

full, as follows:

> "I will, bequeath and devise unto Thomas Hillerbranner, sometimes
>
> known as Thomas Hilldebrand (I am not sure of the spelling of his last name),
>
> who is a son of Ed Hillerbranner or Ed Hilldebrand, (I am not sure of the spelling
>
> of his name), of Quincy, Illinois, and who is now a youth of about thirteen (13)
>
> years of age, the following described real estate in this paragraph, to have and to
>
> hold for the lifetime of the said Thomas Hillerbranner or Thomas Hilldebrand,
>
> and on the death of the said Thomas Hillerbranner or Thomas Hilldebrand, to the
>
> heirs of his, the said Thomas Hillerbranner or Thomas Hilldebrand's body that are
>
> living at the time of the death of the said Thomas Hillerbranner or Thomas
>
> Hilldebrand. The fee shall not de[s]cend or vest in the said heirs of his body until
>
> the time of the death of the said Thomas Hillerbranner or Thomas Hilldebrand.
>
> In the event that the devise in this paragraph is declared invalid or held
>
> void in any way, whatsoever, the lands hereinafter described in this paragraph

shall de[s]cend in fee simple to the said Thomas Hillerbranner or Thomas Hilldebrand, but shall only do so in the event of said invalidation or voiding."

¶ 9 Henry died in October 1948, and Thomas inherited the property. In 2017, Thomas died, and his will was admitted to probate. Thomas's will devised all of his property to Ferol, his surviving spouse.

¶ 10 In 2018, plaintiffs filed the instant lawsuit, alleging that (1) Thomas possessed a mere life estate and (2) under the terms of Henry's will, plaintiffs were the fee simple owners of the property. Plaintiffs requested the trial court to (1) quiet title in the property to them, (2) order Ferol to pay reasonable rent for the years she occupied the property, and (3) evict Ferol.

¶ 11 In November 2018, Ferol filed a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2018)) in which she alleged that she was the rightful owner of the property pursuant to the Rule in Shelley's Case. Ferol set forth the rule as follows: "Whenever, in the same instrument, an estate of freehold is limited to the ancestor, and a remainder to his heirs or heirs of his body, either mediately or immediately, in fee, or in tail, [the] word 'heirs' is one of limitation of the estate and not of purchase and the ancestor takes the fee. *City Bank and Trust Co. v. Morrissey*, [118 Ill. App. 3d 640, 644, 454 N.E.2d 1196, 1198 (1983)]; *Seymore v. Heubaum*, 65 Ill. App. 2d 89, 95, 211 N.E.2d 897, 900 (***1965)."

¶ 12 Plaintiffs filed a response and a motion for summary judgment (735 ILCS 5/2-1005 (West 2018)). Plaintiffs asserted that the Rule in Shelley's Case did not apply because "heirs of his *** body that are living at the time of [Thomas's] death" described a distinct, limited class of individuals and not heirs generally. Ferol argued that "heirs of his *** body" explicitly invoked the Rule in Shelley's Case because it was a classic formulation of a transfer subject to the rule. Ferol asserted that "living at the time of [Thomas's] death" was nothing more

than restating the obvious: heirs can only be determined at the time of death and can only inherit if living. Plaintiffs countered that Ferol's interpretation rendered the language of the will superfluous and the only way to give effect to the plain language of the will—and follow the intentions of the testator—was by reading "heirs of his *** body that are living at the time of [Thomas's] death" as words of purchase describing the class of takers and not as words of limitation describing the type of estate devised.

¶ 13        Ultimately, the trial court agreed with plaintiffs and entered judgment in their favor. Ferol appealed, and this court dismissed the appeal for lack of jurisdiction and want of a final order. On remand, the trial court adjudicated all the remaining claims, set rent, and stayed enforcement of the judgment pending review by this court.

¶ 14                                II. ANALYSIS

¶ 15        Although the "Rule in Shelley's Case" seems intimidating and complicated, the issue in this case is simple, and the outcome is the same under either party's theory. All parties agree that Henry's will gave Thomas a life estate. The question is, what is the effect of the phrase leaving the remainder "to the heirs of his *** body that are living at the time of [Thomas's] death"?

¶ 16        When construing a will, the court must determine (1) what is being given and (2) to whom it is being given. We begin our analysis by discussing these two issues.

¶ 17                    A. Determining What Is Being Given to Whom:

                        Words of Limitation and Words of Purchase

¶ 18        "Words of limitation" refers to words that limit or describe "the extent or quality of an estate conveyed or devised." *Richardson v. Roney*, 382 Ill. 528, 535, 47 N.E.2d 714, 717 (1943). At common law, a transfer "to A" created a life estate and not a fee simple. *Baker v.*

*Scott*, 62 Ill. 86, 97 (1871). To transfer a fee simple, one had to use the words "to A and his heirs." *Id.* The word "heirs" had a highly technical meaning and was necessary to indicate generational transfer and to give a fee simple. See *Roney*, 382 Ill. at 535. If a person instead gave property "to A and the heirs of A's body," a fee tail was created. (A fee tail is an estate in land that passes generation to generation through lineal descendants in a direct line. *Dempsey v. Dempsey*, 342 Ill. App. 3d 969, 972, 795 N.E.2d 996, 998 (2003)—in other words, to A, then to A's children, then to A's grandchildren, and so on.) There are many other types of estates, but one need not know them or their magic words to understand this case.

¶ 19        "Words of purchase" refers to words describing who is taking a given estate. *Bibo v. Bibo*, 397 Ill. 505, 508, 74 N.E.2d 808, 810 (1950). For instance, one might devise real property as follows: "I leave my farmland, in fee simple, to my heirs related to me by blood who survive me." In this example, the words "in fee simple" constitute words of limitation describing the estate being transferred. "[T]o my heirs related to me by blood who survive me" constitute words of purchase because they describe a distinct, identifiable class of takers who will inherit and, despite the use of the word "heirs," do not describe the type of estate given. The terms "heirs" and "heirs of the body" are typically considered words of limitation but can be considered words of purchase if such an intention is clear from the transfer instrument. See *id.* at 509-11; *Cahill v. Cahill*, 402 Ill. 416, 425-27, 84 N.E.2d 380, 386-87 (1949).

¶ 20        B. What Was Given to Whom in This Case: Construing Henry's Will

¶ 21        In this case, "heirs of his *** body that are living at the time of [Thomas's] death" constitute words of purchase describing the takers and not words of limitation describing the estate to be taken. "Heirs of the body" means "lineal descendants," in other words, biological descendants only. *Sauls v. Cox*, 394 Ill. 81, 86, 67 N.E.2d 187, 190 (1946); *Aetna Life Insurance*

*Co. v. Hoppin*, 249 Ill. 406, 413, 94 N.E. 669, 671 (1911) (*Aetna I*). In-laws and spouses do not qualify (and at common law, neither did stepchildren nor adopted children). By specifying that the bodily descendants must be living at Thomas's death to inherit, Henry made clear that he intended the words "heirs of the body" to identify a distinct class of individuals who would inherit in their own right so long as they satisfied the contingency. See *Bunn v. Butler*, 300 Ill. 269, 272, 133 N.E. 246, 247 (1921) (holding under similar circumstances that "[t]he words 'the heirs of the body of the said Henry Wirt Butler surviving him' are therefore words of purchase, and not words of limitation."); *Aetna I*, 249 Ill. at 414 ("A conveyance for life with remainder to the heirs or heirs of the body of a living person creates a contingent remainder.").

¶ 22        Essentially, the gift in this case is the same as if Henry had named the plaintiffs as individuals. See *Arnold v. Baker*, 26 Ill. 2d 131, 134, 185 N.E.2d 844, 847 (1962) ("The rule [in Shelley's Case] applies, however, only where the gift in remainder refers to an indefinite line of succession, rather than to a specific class of takers. The remainder must be to heirs *** by the name of heirs *** and not to heirs as meaning or explained to be individuals."). Henry could not actually name them individually when he wrote his will because (1) Thomas was 13, (2) Thomas had no bodily descendants, and (3) the descendants needed to be alive at the time of Thomas's death to inherit. Henry avoided this problem by designating a class of future takers and using "heirs of the body" as words of purchase—that is, in legal jargon, by adding to the term "heirs of the body" "other words *** which so limit its meaning that it does not include the whole line of inheritable succession but only designates the individuals who are at the death of the life tenant to succeed to the estate, and who are themselves to constitute the source of future descent." *Id.* at 134-35; *Cahill*, 402 Ill. at 425. Accordingly, the trial court's judgment was correct.

¶ 23        C. The Result if "Heirs of His *** Body" Constituted Words of Limitation

¶ 24        Even if we agreed with Ferol, the result would be the same. Ferol apparently

argues that "heirs of the body" has the same meaning as "heirs" for the purposes of the Rule in

Shelley's Case. Ferol contends that regardless of whether one leaves a remainder to "heirs" or

"heirs of the body," the result is the same: the rule gives the ancestor a fee simple absolute. But

at common law, "heirs of the body" was unambiguous, and when used as words of limitation, the

phrase could create only a fee tail estate. *Aetna Life Insurance Co. v. Hoppin*, 214 F. 928, 932

(7th Cir. 1914); *Cox*, 394 Ill. at 86-87; *Bibo*, 397 Ill. at 509-10 (collecting cases). In addition, as

we explain, the Rule in Shelley's Case applies to both fee tail estates and to fee simple estates,

but the result of application of the rule is that the ancestor is vested with *either* a fee tail *or* a fee

simple and not a fee simple in every case.

¶ 25                            1. *The Rule in Shelley's Case*

¶ 26        The Rule in Shelley's Case is a rule of property, not a rule of construction. *Cahill*,

402 Ill. at 421; *Roney*, 382 Ill. at 533. It applies when a grantee receives a life estate, and the

remainder interest is left to his heirs or heirs of his body. *Evans v. Giles*, 83 Ill. 2d 448, 452, 415

N.E.2d 354, 356 (1980). In such cases, the rule operates to take the remainder interest from the

heirs and vest that interest immediately in the life tenant. *Id.* at 453. The doctrine of merger then

applies to give the life tenant the whole estate, in fee simple or fee tail. *Id.* The Illinois Supreme

Court has repeatedly stated the rule as follows: " 'In any instrument, if a freehold be limited to

the ancestor for life, and the inheritance to his heirs, either mediately or immediately, the first

taker takes the whole estate; *if it be limited to the heirs of his body, he takes a fee tail*; if to his

heirs, a fee simple.' 1 Preston on Estates, 263." (Emphasis added.) *Id.* at 452 (quoting *Frazer v.*

*Board of Superiors of Peoria County*, 74 Ill. 282, 287 (1874)).

¶ 27                            2. *Understanding the Rule*

¶ 28    For example, the devise "to A for life and remainder to his heirs" without the rule would give A a life estate and, upon A's death, a fee simple interest in the property to A's heirs. The rule, however, operates on the remainder and vests it in the life tenant. *Giles*, 83 Ill. 2d at 453. Because the life tenant now holds both the life estate and the fee simple remainder, the doctrine of merger grants the life tenant the entire estate. *Id.* In short, A owns a fee simple and A's "heirs" have nothing. *Arnold*, 26 Ill. 2d at 134.

¶ 29    But, if the devise said, "To A for life and remainder to the heirs of A's body," the remainder interest would be a fee tail. See *Cox*, 394 Ill. at 86-87 (collecting cases). Then, when the Rule in Shelley's Case is applied, A would receive a fee tail estate. *Id.*; *Giles*, 83 Ill. 2d at 453; *Winchell v. Winchell*, 259 Ill. 471, 474-75, 102 N.E. 823, 825 (1913).

¶ 30    A fee tail estate is not the same as a fee simple estate. A fee tail is a strict limitation on real property that requires it to be transferred generation to generation through lineal descendants in a direct line and in perpetuity so long as there are lineal descendants to inherit. *Dempsey*, 342 Ill. App. 3d at 972 (citing *Nave v. Bailey*, 329 Ill. 235, 240, 160 N.E.2d 605, 608 (1928)); *Cox*, 394 Ill. at 85. (For a short and easily understood description of the fee tail and its origins, see *Dempsey*, 342 Ill. App. 3d at 972-73.)

¶ 31    3. *Application of the Rule to Henry's Will*

¶ 32    Even if we applied the Rule in Shelley's Case to Henry's will as suggested by Ferol, Thomas's life estate would have been transformed into a fee tail, *not* a fee simple. See *Giles*, 83 Ill. 2d at 452-53; *Winchell*, 259 Ill. at 474-75; *Bibo*, 397 Ill. at 509-10 (collecting cases). Because Ferol was not an heir of Thomas's body, the property could not pass to her.

¶ 33    D. Why the Result in This Case Is the Same When the Rule Applies

as When It Does Not Apply

¶ 34 If the Rule in Shelley's Case applied to Henry's will, Thomas would still receive a life estate and upon his death, the property would still go to plaintiffs in fee simple. In 1827, Illinois abolished fee tail estates by law and reversed the operation of the Rule in Shelley's Case as to fee tails by passing the Conveyances Act. *Moore v. Reddel*, 259 Ill. 36, 43, 102 N.E. 257, 259 (1913). The language of section 6 of the Conveyances Act remained in substantially the same form after 1845. *Id.*

¶ 35 In 1947, under the version of the Illinois Revised Statutes in effect when Henry made his will, section 6 expressly provided that (1) anyone who would receive property in fee tail instead received a life estate in that property and (2) at the time of that person's death, the property would pass to the bodily heirs in fee simple. Ill. Rev. Stat. 1947, ch. 30, ¶ 5; *Reddel*, 259 Ill. at 43-44; *Frazer*, 74 Ill. at 287-89.

¶ 36 Once again, in this case, the plaintiffs, and not Ferol, are Thomas's bodily heirs. Under Ferol's own theory of the case, by statute, the plaintiffs would have taken a fee simple interest in the property when Thomas died. Thomas could not devise to Ferol a greater interest in the property than he had, and no matter how one examines Henry's will, under the law of Illinois in October 1948, Thomas had a life estate and nothing more.

¶ 37 As we have just explained, Ferol's assertion that the Rule in Shelley's Case always operates to give the ancestor a fee simple is incorrect. Alternatively, any argument by Ferol that "heirs of the body" meant "heirs" in the context of Henry's will is also incorrect.

¶ 38 The term "heirs of the body" will be given its technical legal meaning unless a contrary intent is demonstrated by the will. *Aetna I*, 249 Ill. at 412; *Roney*, 382 Ill. at 535. "Heirs of the body" means lineal descendants. *Id.* It has been said that, when construing wills, courts may treat terms like "heirs," "issue," and "children," interchangeably "*to effectuate the clear*

- 10 -

*intention of the testator.*" (Emphasis added.) *Butler v. Huestis*, 68 Ill. 594, 602 (1873) ("[The authorities for this rule] are as old and authoritative as the cases that announce the rule in Shell[e]y's case.").

¶ 39    The sentence after the devise ("to the heirs of his \*\*\* body that are living at the time of [Thomas's] death") states, "The fee shall not de[s]cend or vest in the said heirs of his body until the time of [Thomas's] death." By using the word "fee" without qualification, Henry demonstrated that he intended to leave a remainder in fee simple. By delaying vesting "in the said heirs of his body," Henry made clear that the phrase "heirs of his \*\*\* body that are living at the time of [Thomas's] death" constituted words of purchase describing a class of takers who inherit the "fee" and was not describing the type of estate given. In addition, the next sentence in paragraph 3 of Henry's will expressly states, "In the event that the devise in this paragraph is declared invalid or held void in any way, whatsoever, the lands hereinafter described \*\*\* shall de[s]cend in fee simple to the said Thomas \*\*\* but shall do so *only in the event of said invalidation or voiding*." (Emphasis added.) This sentence makes plain that Henry intended for Thomas to receive a fee simple in one, and only one, circumstance, which did not occur here.

¶ 40    "[A]t the death of Thomas" followed by "that are living at the time of [Thomas's] death" shows that "that are living" is not referring to the end of the prior estate. Using Thomas's death twice shows that the first use was to say what happens after the life estate ends and the second use was to show "heirs of his \*\*\* body" was a class of individuals to be determined at Thomas's death.

¶ 41    Given this context from the language in the will, Henry's intentions could not have been clearer. Henry wanted Thomas to use the property during Thomas's lifetime and wanted Thomas's living, bodily descendants to inherit the property in fee simple at the moment

of Thomas's death. No other construction is possible, and no other outcome may be reached regardless of whether one applies the Rule in Shelley's Case. The trial court's judgment was correct, and we affirm.

¶ 42                                      III. CONCLUSION

¶ 43            For the reasons stated, we affirm the trial court's judgment.

¶ 44            Affirmed.