(No. 14304.—Decree affirmed.)
WILLIAM I. EDMISTON, Appellee, *vs.* ANNIE DONOVAN *et al.* Appellants.

*Opinion filed December 22, 1921.*

1. WILLS—*when a devise creates a contingent remainder with double aspect—merger.* A devise of a remainder in real property to the testator's only child and the heirs of his body, with a subsequent provision that in the event of the son dying without any children surviving him the property shall go to the testator's nieces and nephews, creates a contingent remainder with a double aspect, and a conveyance by the son while still unmarried and after he has acquired the life estate and the interests of the nephews and nieces merges the life estate and the reversion and destroys the contingent interests. (*Hickox* v. *Klaholt,* 291 Ill. 544, distinguished.)

2. SAME—*the act of 1921 to prevent destruction of future interests is not retroactive—constitutionality.* The act of July 2, 1921, (Laws of 1921, p. 470,) preventing future interests from being defeated by the termination of any precedent estate, is not intended to be retroactive, and as it does not apply where the conveyances relied upon as destroying the future interest were all executed before the act went into effect its constitutionality will not be considered in such case.

3. STATUTES—*a statute should not be given retroactive effect unless intention is clear.* No law should be given a retroactive effect unless the intention to make it retroactive is clearly expressed therein.

APPEAL from the Circuit Court of DeWitt county; the Hon. GEORGE A. SENTEL, Judge, presiding.

SMITH & SMITH, (WILLIAM F. SMITH, guardian *ad litem,*) for appellants.

HERRICK & HERRICK, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill to quiet title and for partition, filed by appellee in the circuit court of DeWitt county. The matter was referred to a master in chancery, who heard the evidence and made a report recommending that the prayer of the petition be denied. On a hearing the court sustained exceptions to the master's report and entered a decree for partition. From that decree this appeal was prayed.

David W. Edmiston, the father of appellee herein, a resident of the city of Clinton, in said county, died seized of a farm in Iowa and some lots in Clinton and certain personal property. At the time of his death, May 10, 1907, he was divorced from his wife. He left his son, the appellee, his sole heir-at-law. His will, dated July 30, 1904, after providing for the payment of debts and funeral expenses, bequeathed certain personal property absolutely to different legatees. It also provided: "I give, devise and bequeath to my housekeeper, Annie Gardner, * * * the life use of the south half of lots 5 and 6, in block 27, in the original town (now city) of Clinton, Illinois, * * * and at her death the remainder to my son, William I. Edmiston, and the heirs of his body." And also: "I give, devise and bequeath to my son, William I. Edmiston, and the heirs of his body, 160 acres of land situated in the township of Douglas, county of Sac and State of Iowa; also the north half of lots 5 and 6, block 27, in the original town (now city) of Clinton, Illinois." By a codicil dated January 27, 1907, he declared that his wife, Jeannette, having accepted a divorce from him without alimony was no longer

his wife, legally, and that she had no claim against his estate, and then provided: "In the event of my son, William I. Edmiston, dying without any children surviving him, then it is my will and desire that the property *conveyed* to him shall be divided equally among my nephews and nieces, Ella Morris, Frank Barber, John Barber, Milo Barber, Jr., and Daisy Courtwright, they being the children of my full sister, Mary Edmiston Barber." A second codicil, dated May 6, 1907, stated that if the provisions laid down in his will and the first codicil were not accepted by his legatees and devisees, his executor might sell the real estate and settle all just debts and claims, the residue, if any, to go to his son, the appellee.

The nephews and nieces above mentioned, with the respective husbands or wives of such as were married, executed warranty deeds of the lots to appellee on February 22, 1916. Annie Gardner (afterwards Annie Donovan) quit-claimed her life estate in the south half of the two lots September 17, 1917, to the divorced wife. These lots had in 1913 been sold for taxes and a certificate of purchase issued to Weldon Ward, who assigned his certificate to the divorced wife, Jeannette Edmiston. She afterwards received a tax deed thereto executed by the county clerk and quit-claimed her interest in the two lots to appellee on December 10, 1919. On December 11, 1919, appellee executed a warranty deed to lots 5 and 6 to Ralph Parker, in which deed it was stated to be the intention that the particular estate then owned by the grantee should merge in the reversion in fee thereby conveyed and by virtue thereof be prematurely destroyed and the grantee at once vested with the fee simple title, and that any contingent future interest and any other interest in any lineal descendant thereafter born to the grantor should be thereby destroyed. Parker quit-claimed his interest in said lots to the appellee, who then conveyed by warranty deed a one-third interest to his mother, Jeannette Edmiston.

No question is raised in the briefs as to the title prior to the death of David W. Edmiston. The son, William I. Edmiston, was never married and had no children at the time of the execution of the deeds conveying the property. Under the provisions of this will it would seem evident that Annie Donovan had a life estate in the south half of lots 5 and 6, and that a farm of 160 acres in Iowa and the north half of said lots and the remainder in the south half of the lots was devised to the appellee and the heirs of his body, with a further limitation over, in the event that if he die "without any children surviving him," to the testator's specified nephews and nieces in fee. Appellee was the sole heir-at-law of the testator and therefore had the reversion in fee. Annie Donovan's life estate quit-claimed to the widow was conveyed to appellee, who then conveyed his own life estate and Annie Donovan's life estate and his reversion in fee to Ralph Parker, who quit-claimed back the land to appellee. If the estates limited after the decease of appellee were contingent remainders they were destroyed by the premature termination of the life estates by merger. The interest of the unborn children of appellee is a contingent remainder and destructible.

The case presented by the provisions of the will quoted is a plain one of a contingent remainder with a double aspect, limited upon alternative events. Such a remainder is considered and discussed in *Loddington* v. *Kime,* 1 Salk. 224. The remainder here under consideration as to being a contingent one with a double aspect is similar to the remainders referred to by this court in *Smith* v. *Chester,* 272 Ill. 428, and *Stevens* v. *VanBrocklin,* 295 id. 434. The recent case decided by this court, *Brinkerhoff* v. *Butler,* 296 Ill. 368, is very similar in principle to the case here involved and the decision in that case must be held controlling in construing this will. The case of *Hickox* v. *Klaholt,* 291 Ill. 544, relied on by counsel for appellants, is not in point, because there the life tenant had children *in esse* when the

testator died. Those children took vested remainders at once, under the reasoning of this court in *Moore* v. *Reddel,* 259 Ill. 36, hence the gift over in the *Hickox case* was a shifting executory devise, as stated by this court in the opinion, and was indestructible. The limitations over after the decease of William I. Edmiston being contingent remainders, they were destroyed by the premature termination of the life estate by merger. *Bond* v. *Moore,* 236 Ill. 576; *Belding* v. *Parsons,* 258 id. 422; *Benson* v. *Tanner,* 276 id. 594; *Gray* v. *Shinn,* 293 id. 573. See, also, for a discussion as to contingent remainders and the right to destroy them by merger, Kales on Future Interests, (2d ed.) secs. 77, 85, 96, 97, 98.

Counsel for appellants argue that the merger could not take place under the provisions of the act passed July 2, 1921, (Laws of 1921, p. 470,) preventing future interests from being defeated by the determination of any precedent estate. These deeds were all executed before this act went into effect. No law should be given a retroactive effect unless the intention to make it retroactive is clearly expressed therein. (*Thompson* v. *Alexander,* 11 Ill. 54; *In re Tuller,* 79 id. 99.) It seems clear from the wording of the act that it was not intended in any way to be retroactive, and therefore it is unnecessary for us to consider or decide whether it could be held constitutional if given a retrospective operation, as affecting vested rights.

The decree of the circuit court holding that the deeds placed the full fee simple title in William I. Edmiston and Jeannette Edmiston as tenants in common, he owning an undivided two-thirds interest and she owning an undivided one-third interest, and ordering partition accordingly, was right, and it will be affirmed.          *Decree affirmed.*