(No. 22234.—

KATHRYNE HAUSER, Appellant, *vs.* JAMES W. POWER *et al.* Appellees.

*Opinion filed April 21, 1934—Rehearing petition stricken June 7, 1934, for violation of rule 44.*

CAREY E. BARNES, for appellant.

A. M. FITZGERALD, and BARBER & BARBER, for appellees.

Mr. JUSTICE FARTHING delivered the opinion of the court:

Appellant, Kathryne Hauser, filed her bill of complaint in the Sangamon county circuit court to construe the third item of the will of James E. Power. A demurrer to the

bill was sustained and the bill was dismissed for want of equity. On appeal the decree was reversed and the cause remanded, with directions to make the mortgagee of certain real estate involved in the suit a party defendant. (*Hauser* v. *Power,* 351 Ill. 36.) At the January, 1933, term of the Sangamon county circuit court an amended bill was filed accordingly, to which a demurrer was sustained. The amended bill was dismissed for want of equity, and the case is here again on appeal.

James E. Power, the testator, died on November 25, 1898. He left a widow and three minor children. By the third item of his will he provided: "Subject to the above mentioned rights of my said wife, I give and devise unto my beloved son James W. Power, for and during the term of his natural life and at his death to the heirs of his body the following real estate, to-wit: [Describing certain lands in Sangamon and Christian counties.] Should my said son James W. Power die leaving no heirs of his body him surviving the lands above mentioned in this item shall revert to my heirs-at-law and be divided among them in fee simple." November 15, 1900, James W. married Kathryne Alkire, the appellant. Their only child, James A. Power, died July 29, 1919. Kathryne and James W. Power were divorced on July 27, 1906. Later Kathryne married George Hauser. After James A. was born, James W. and the other heirs of James E. executed conveyances of the lands described in the third item of the will to Frank C. Reilly for the purpose of destroying the interest of James A. or his heirs, and Reilly conveyed the lands to Charles P. Power, who claims to own them in fee simple. On February 27, 1931, Charles P. and wife mortgaged a part of the land for $28,000. James W., the life tenant, died after the original bill was filed. In the amended bill, Charles P. Power, another son of the testator, and June Power Reilly, a daughter, Frank C. Reilly, her husband, and the Ridgely-

Farmers State Bank, the mortgagee above mentioned, were made defendants.

Appellant contends that by the common law James W. Power would have become seized in fee tail of the lands described in the third item of the will, and that section 6 of the Conveyance act converted the estate tail into a life estate in him with a remainder in fee simple to the person or persons to whom the estate tail would have passed upon the death of the first grantee according to the course of the common law. She contends that because at the testator's death there was no person in being to whom the remainder in fee could pass, the remainder was contingent and the reversion was in the heirs generally of the testator, but that on the birth of James A. Power the remainder vested in him in fee simple and the heirs of the testator were divested of the reversion. She next contends that when James A. died the title passed by inheritance to his heirs, viz., his father, James W., and his mother, the appellant. She says that the last sentence of item 3 of the will is void as a devise for two reasons, the first of which is that it would be a gift to a class of which James W. was one member, but that he had to be dead before the gift could become operative, if at all, and that since one of the class could not take, this disqualified the class in its entirety. The second reason assigned is, that an executory limitation cannot be created to take effect after the statutory remainder in fee created by section 6 of the Conveyance act, and if the last sentence in the third item of the will should be construed to be an alternative contingent remainder, or if the item created a contingent remainder with a double aspect, that part contained in the last sentence of that item was destroyed when the remainder became vested in fee in James A. at his birth.

The appellees contend that the words "heirs of his body" are not used as words of limitation but as words of purchase to determine those who would take instead of

the estate to be taken, and therefore the rule in Shelley's case has no application; that the estates created by the third item of the will were alternative contingent remainders to the heirs of the body of James W. Power and the heirs of the testator to vest at the death of the life tenant. They also contend that if the rule in Shelley's case were held to be applicable, the gift over to the heirs of the testator can be sustained as an executory devise.

An act concerning future interests was approved July 2, 1921. (Laws of 1921, p. 470.) A destruction of contingent interests in land by a merger of the life estate and the reversion was presented thereafter, but the act had no retroactive effect. Edmiston v. Donovan, 300 Ill. 521.

The controversy is whether the remainders limited to the heirs of the body of James W. Power him surviving or to the heirs of the testator were contingent and destructible by the merger of the life estate with the reversion. The answer to the question is determined largely by the intention of the testator. To learn his intention we must ascertain in what sense he used the words "heirs of his body" in the first part of the third item, and the words "heirs of his body him surviving" in the last part of the same item of the will. It is said in Ætna Life Ins. Co. v. Hoppin, 214 Fed. 928.: "Under the English law of primogeniture no ancestor could leave surviving him more than one heir. If he left sons, the eldest was his heir. If daughters, only, they took as one heir as co-parceners. So a deed to A for life and then to the heir of his body might have different meanings. If there was no context it was considered that the singular form was used collectively to indicate indefinite succession, and Shelley's case applied. But a context might show that the singular form was employed to describe the person who by survival would become the heir of A's body, and that such heir should constitute a new stock of descent. But a deed to A for life and then to the heirs of his body contained no ambiguity

under the English law. 'Heirs' could not be taken as descriptive of the one person—it could only mean the indefinite succession from generation to generation. Therefore, in a deed to A for life and then to the heirs of his body, their heirs and assigns, the added words were ineffectual to obviate the rule in *Shelley's case*. 'Heirs of the body,' being usable only to create an estate in tail, could not be descriptive of co-existent persons who on the death of the donee for life could then answer as the heirs of his body and whose estate would be defined by the added words 'their heirs and assigns' as a remainder in fee simple. The application of the rule in *Shelley's case* to this last supposed deed (*Wright v. Pearson*, 1 Ed. 119; *Measure v. Gee*, 5 B. & Ald. 910;) is entirely consistent with the rule in *Archer's case*, where primogeniture prevails. (*Bayley v. Morris*, 4 Ves. Jr. 788; *Evans v. Evans*, (1892) 2 Ch. 173.) But in Illinois, and in this country generally, where the surviving children, as tenants in common, stand for the surviving eldest son, 'heirs' may have different meanings, just as under English law the singular form 'heir' might have different meanings. If there is no context, 'heirs' must be held to indicate the indefinite succession by inheritance and *Shelley's case* applied. But a context may demonstrate that 'heirs' was a description of purchasers who should constitute a new stock of descent.—*Ætna Life Ins. Co. v. Hoppin*, 249 Ill. 406, 94 N. E. 669, where *Archer's case* was relied on."

Under present day conditions, with estates tail abolished and no longer capable of creation under our statute, the tendency is to consider the words "heirs of the body" and to construe them, *prima facie* at least, as words of purchase rather than as words of limitation. In other words, to consider that rather than indicating an indefinite line of descent they indicate who shall take at the close of the estate of present enjoyment. They indicate the takers of the estate rather than the estate to be taken.

*Bunn* v. *Butler,* 300 Ill. 269; Kales on Estates and Future Interests, (2d ed.) sec. 545.

In *Bunn* v. *Butler, supra,* we held that the intention of the testator was that "heirs of the body" meant those who should take the estate and did not indicate an indefinite failure of issue at some remote time. The words "him surviving" afforded a sufficient context to indicate that meaning. The same is true in this case. We there said: "We have repeatedly held that the words 'heirs of the body' are often used in a will as words of purchase when it is clear from the context of the will that the words describe the takers and not the estate to be taken. [Citing cases.] The language of the will clearly expresses the intention of the testator, and we are disposed to regard the intention of the testator clearly expressed in his will as the all-controlling element in the decision of this case, rather than place the decision upon any refined reasoning or any inappreciable distinctions as to the technical meaning of the words employed." To the same effect we held in *Ætna Life Ins. Co.* v. *Hoppin, supra,* that the words "heirs of the body," when limited by the words "their heirs and assigns," were words of purchase and not of limitation and that no estate tail was intended to be created.

In *Ortgiesen* v. *Ackerman,* 311 Ill. 492, where the testator devised a life estate in his lands to his daughter with remainder to the heirs of her body, or in default of such heirs of her body living at the time of her death the remainder was devised to her brothers and sisters in fee, we held that the intention of the testator was to limit the remainder to the issue of the daughter living at the date of her death, and if there were none, then to her brothers and sisters in fee. This decision denied the husband of the daughter the right to share in the land as heir of his wife.

Since here the testator used "heirs of his body" and "heirs of his body him surviving" in the same item of the will, without indicating in any way that his meaning was

to be different in the one use of the words from that where they were again employed, it must be held that the meaning in both instances was the same. We are of the opinion that the words were used as words of purchase rather than as words of limitation. The indefinite failure of issue was clearly negatived by the last sentence of the item.

In *Calvert* v. *Calvert*, 297 Ill. 22, the testator directed his widow to buy four eighty-acre tracts of land and to deed one to each of his four children. The limitation provided for and which was contained in each of the four deeds she later made, was: To "Estella A. Calvert during the period of her natural life, with the remainder to her children. If, however, she dies leaving no child or children or descendant or descendants of a child or children, then such remainder shall vest in the brothers and sisters of the said Estella A. Calvert and their legal heirs." As in this case, deeds were made in an effort to cut off contingent remainders. We held that the gift over to the brothers and sister of each of the grantees in the four deeds was an executory devise and indestructible, though we also held that the children of each of said grantees who had children took a vested estate, and that the only contingent interest which was destroyed was the contingent remainder in the unborn children of Henley A. Calvert, who had no children.

From the reasoning in the *Calvert case*, if the words "heirs of his body" are taken to be words of purchase, the limitation over would be an executory devise to take effect upon the death of James W. Power, the life tenant, without leaving heirs of his body him surviving. In this view of the case the appellant could claim nothing, since she was not one of the heirs of the testator in whom the fee became vested by the executory devise when the life tenant died with no heirs of his body living to take the remainder at his death. Regardless of the validity or invalidity of the limitation over to the heirs of the testator,

James E. Power, the interest of James A. Power ceased at his death before the life estate terminated, although his interest would have become indefeasible had he survived his father, James W. Power. There was, therefore, no interest in her son, James A., which could descend to the appellant.

If we assume that the words "heirs of his body" were words of limitation and that an estate tail was attempted to be created upon which section 6 of the Conveyance act would operate, as the appellant contends, the result would be the same. In *Hickox* v. *Klaholt,* 291 Ill. 544, the words of the devise were such that they created an estate tail at common law without the use of the rule in *Shelley's case,* but we held that the remainder in fee was subject to the limitation over and that it was a valid executory devise. We said: "The fee simple absolute declared by the statute is subject to the future interest limited upon the contingent future event, and if such future interest arises it will be by its own strength and not by derivation from the present owners of the fee. The warranty deed tendered did not convey an absolute title in fee simple, and while the makers of the deed would be estopped to claim the estate by their conveyance, persons claiming under the executory devise would not be so estopped." There is nothing which makes such a limitation contrary to the public policy of this State or which would prevent it from taking effect upon a remainder in fee simple absolute provided for under section 6 of the Conveyance act.

The appellant says the executory devise is invalid since James W. Power is one of the class of heirs generally, and that since he could not take upon or after his death, the class being broken by his death and one of its number being incapable of taking, all were likewise rendered incapable of taking. What we said in *Himmel* v. *Himmel,* 294 Ill. 557, where the cases on the subject are reviewed

at length, disposes of this contention adversely to the appellant. In that case, from the intention of the testatrix as expressed in her will, the heirs were determined as of the date of her death although the life tenant was her only heir. Whether the heirs were determined at that date or the class included only such persons as were living heirs of the testator at the death of James W. Power, the life tenant, the appellant, who was the divorced wife of James W., can take nothing. The testator clearly inintended that the title to the real estate should pass to his own lineal descendants and none other.

It is argued, also, that estates by inheritance are deemed more worthy than estates by devise, and that the executory devise to the heirs of the testator would be void for this reason. This rule had its origin under the feudal system. Under that system the overlord received certain feudal dues in the event lands passed by descent. The reason for the rule no longer exists, but the rule was never applied in a case such as this, where the effect of its application would be to prevent the heirs of the testator from taking either by devise or descent. Whether the heirs took by descent or devise it would be fatal to the appellant, for in either case she could take nothing. She was not an heir of the testator. Her only claim is as heir of her son, James A. Power.

In the view we take of this case the demurrer to the amended bill of complaint was properly sustained, and the appellant was not entitled to an allowance of solicitors' fees.

The decree of the trial court is affirmed.

*Decree affirmed.*