TERRI JO EVANS *et al.*, Plaintiffs-Appellees, *v.* GENEVA GILES *et al.*,
Defendants-Appellants.

Fourth District   No. 15551

Opinion filed January 14, 1980.—Rehearing denied February 19, 1980.

TRAPP, J., dissenting.

William M. Rice and James W. Alling, both of Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, for appellants.

Elmer C. Hawkins, of Woollen, Brown, Hawkins & Basola, of Decatur, for appellees.

Mr. JUSTICE GREEN delivered the opinion of the court:

This case concerns title to 320 acres of Macon County farmland. At issue is the construction of the will of Sard Giles who died November 22, 1925. Article Third of his will devised the land to his daughter Leta Timmons for life,

"* * * with remainder over to the heirs of the body of her, the said Leta Timmons, and in the event of the death of the said Leta Timmons without issue, then in that event, the real estate herein, * * *, I give, devise and bequeath to Elmo S. Giles for and during his natural life with remainder over to the heirs of the body of him, the said Elmo S. Giles."

The parties agree that this devise created a life estate in Leta Timmons followed by alternate contingent remainders.

On April 8, 1972, Leta G. Timmons died never having had children. The parties agree that this caused the failure of the first contingent remainder to the heirs of her body. Previously on February 9, 1951, Elmo S. Giles, son of Sard Giles, died leaving Elmo S. Giles, Jr., the only child ever born to him. On February 26, 1968, also prior to Leta's death, Elmo

S. Giles, Jr., died never having had children. The precise question to be decided is whether all estates after the life estate of Leta Timmons failed causing the title to the tract, in the absence of a residuary clause, to revert to the heirs of Sard Giles, thus enabling plaintiffs as devisees of Leta Timmons to take her one-half interest in that reversion, or whether defendants, the devisees of the contingent remainder interest of Elmo S. Giles, Jr., take through him and are entitled to the remainder in fee.

Plaintiffs filed suit for partition and an accounting in the circuit court of Macon County on August 2, 1977. On March 16, 1979, the circuit court entered a decree finding that plaintiffs had a one-half interest in the property and holding survival of Leta Timmons by Elmo S. Giles, Jr., was necessary for defendants to have taken the entire interest. Defendants have appealed, asserting that neither rules of construction nor the expressed intent of the testator required Elmo S. Giles, Jr., to have so survived. Based upon our analysis of the interests created by Article Third of the will, we agree with defendants. Accordingly, we reverse.

The question presented is most complicated and requires lengthy analysis. We begin by discussion of an aspect of the case not discussed at length in the briefs: the question of the application of the Rule in Shelley's Case to the limitations set forth in Article Third of the will. That rule has been defined as follows,

" 'In any instrument, if a freehold be limited to the ancestor for life, and the inheritance to his heirs, either mediately or immediately, the first taker takes the whole estate; if it be limited to the heirs of his body, he takes a fee tail; if to his heirs, a fee simple.' 1 Preston on Estates, 263." (*Frazer v. Board of Supervisors* (1874), 74 Ill. 282, 287.)

The rule was in effect at the time of Sard Giles' death and continued until abolished by legislation in 1953 (Ill. Rev. Stat. 1977, ch. 30, par. 186). Plaintiffs maintain that the rule does not apply to remainders given to the heirs of the body of a life tenant. Consideration of the question requires that we also consider section 6 of "An Act concerning conveyances" which at the time of the death of Sard Giles provided:

"In cases where, by the common law, any person or persons might hereafter become seized, in fee tail, of any lands, tenements or hereditaments, by virtue of any devise, gift, grant or other conveyance, hereafter to be made, or by any other means whatsoever, such person or persons, instead of being or becoming seized thereof in fee tail, shall be deemed and adjudged to be, and become seized thereof, for his or her natural life only, and the remainder shall pass in fee simple absolute, to the person or persons to whom the estate tail would, on the death of the first

grantee, devisee, or donee in tail, first pass, according to the course of the common law, by virtue of such devise, gift, grant or conveyance." Smith-Hurd Rev. Stat. 1925, ch. 30, par. 5.

■■ Absent the operation of the Rule in Shelley's Case, a limitation to A for life remainder to the heirs of A's body does not create an entailment but a life estate in A and a remainder to the heirs of A's body as a class. (See *Hofing v. Willis* (1964), 31 Ill. 2d 365, 369, 201 N.E.2d 852, 854; *Hauser v. Power* (1934), 356 Ill. 521, 191 N.E. 64; *Boon v. Boon* (1932), 348 Ill. 120, 180 N.E. 792.) Thus, operation of the Rule in Shelley's Case is necessary to convert a limitation to A for life with remainder to the heirs of his body to an entailment. However, once this is done, section 6 of "An Act concerning conveyances" operates to substantially reverse the effect of the rule and change the limitation into a life estate in A with a remainder in fee to those who, under an entailment, would be the first takers upon A's death. It is for this reason that the rule is sometimes said to be inapplicable to remainders in the heirs of the body of the life tenant. See *Winchell v. Winchell* (1913), 259 Ill. 471, 102 N.E. 823; Simes, Handbook of the Law of Future Interests §25, at 55 (2d ed. 1966) (hereinafter Simes).

■■■ In any event, in the case before us, the parties agree that section 6 operated upon the limitation to Leta Timmons for life with, in effect, a remainder to the heirs of her body to create a life estate in Leta and a remainder which failed upon her death without having had issue. The dispute is as to the analysis of the alternate contingent limitation to Elmo S. Giles, Sr., for life with remainder to the heirs of his body. In *Gehlbach v. Briegel* (1934), 359 Ill. 316, 194 N.E. 591, the supreme court stated that the rule did not operate upon contingent remainders. If that were so, the contingent limitation here would have created a contingent life estate in Elmo, Sr., and a contingent remainder to the heirs of his body as a class. But subsequently in *Richardson v. Roney* (1943), 382 Ill. 528, 47 N.E.2d 714, that court criticized the language of *Gehlbach* and held that the rule does operate on contingent remainders.

Under *Richardson*, the rule did operate upon the effective date of the will and created a contingent entailment in Elmo, Sr. The question then arises as to whether section 6 then operated upon that contingent estate tail. That provision states it to be applicable when by the common law "any person or persons *might* hereafter become seized in fee tail * * *" (emphasis added). If the section does not take effect until someone is actually seized of an entailment, the contingent entailment to Elmo, Sr., never took effect and never could take effect because of the failure of that blood line before anyone in that line ever became seized of the property.

However, it would seem illogical to have allowed the Rule in

Shelley's Case to operate upon the limitation to create a contingent fee in tail and then not permit section 6 to also operate at the same time to change that entailment to a contingent life estate with a contingent remainder in fee. To so hold would be contrary to the language in *Winchell* that the effect of section 6 was to nullify the operation of the Rule in Shelley's Case with respect to fee tail estates. We, therefore, conclude that if the Rule in Shelley's Case created a contingent entailment in Elmo, Sr., he was then a person who "might [thereafter] become seized in fee tail" in the property in question within the meaning of section 6. That section then operated to create a contingent life estate in him and a contingent remainder in the heirs of his body.

The trial court deemed section 6 to operate only once on the whole gift and not separately as to each entailment created by the gift. It thus concluded that no remainder in fee of any kind could be created in Elmo, Jr., because he was not a person "to whom the estate tail would, on the death of the first * * * devisee * * * first pass" as he was not an heir of the body of Leta Timmons, the first person to whom an entailment was given by the devise. We conclude, however, that the section operated upon both the entailment to Leta Timmons and the contingent entailment to Elmo, Sr., and the person "to whom the estate tail would on the death of the first * * * devisee * * * first pass" has reference to the estate first passing in the entailment upon which the section is operating. The contingent entailment to Elmo, Sr., was not part of the entailment to Leta.

■■ We have thus determined (1) if for any reason the Rule in Shelley's Case did not operate on the contingent limitation to Elmo, Sr., for life with remainder to the heirs of his body, the limitation created a contingent life estate in Elmo, Sr., with a contingent remainder in the heirs of his body as a class, and (2) if the rule did operate, section 6 also operated to make the limitation a contingent life estate in Elmo, Sr., with a contingent remainder in fee in the person or persons who would first take under an entailment on his death. Under either theory, upon the death of Elmo, Sr., prior to that of Leta Timmons, Elmo S. Giles, Jr., and his devisees or grantees became the only persons who could take that remainder interest.

■■ Leta Timmons was necessarily presumed to be capable of bearing issue until her death. (*Hill v. Sangamon Loan & Trust Co.* (1920), 295 Ill. 619, 129 N.E.2d 554.) It is thus clear that any interest taken by defendants through the will of Sard Giles remained contingent upon Leta Timmons' dying without issue until that actually occurred. We now come to the ultimate question of whether that interest was also contingent upon Elmo Giles, Jr., surviving Leta Timmons.

Plaintiff's contention that Elmo, Jr., was required to survive Leta in

order for his devisees to take through the will is supported by *Golladay v. Knock* (1908), 235 Ill. 412, 85 N.E. 649. There, a testator left property to his wife for life, remainder to her children and if she did not have surviving children then to Moses Golladay and his heirs. The life tenant wife died without surviving children. Moses Golladay predeceased her as did several of his children who survived Moses but predeceased the life tenant. The court held that those claiming through the deceased children of Moses took no interest in the property. Although those children were ascertained at Moses' death as among his heirs, their failure to survive the contingency of whether the life tenant would have surviving children was deemed to prevent their contingent interest from ever vesting.

On the other hand, dictum in *Moroney v. Haas* (1917), 277 Ill. 467, 115 N.E. 648, supports the position of defendant. There, a residuary devise was to Hill in trust for Sadie Stockel for life with remainder to her children who survive her (and also subject to another contingency held to be void for violating the rule against perpetuities), but if no children or their issue survived her then to Hill absolutely. Hill survived the testator but not Sadie Stockel. The court stated that if Sadie died without issue, the remainder would take effect in Hill's heirs. He thus had an alternate contingent remainder which would take effect upon the failure of the first remainder regardless of his surviving the determination of the contingency which brought about the failure of that remainder.

In *Hofing v. Willis* (1964), 31 Ill. 2d 365, 373-74, 201 N.E.2d 852, 856, the supreme court clarified the question of whether persons designated as alternative contingent remaindermen are required to survive the failure of the first contingent remainder in order to take. Two deeds were construed to create life estates in the grantor's son and daughter-in-law with the provision that upon the death of the life tenants, the property " 'shall revert to the heirs of the body' " of the grantor's son but " 'in case there be no heirs, then the lands shall revert' " to the son's sisters " 'and to their heirs and assigns forever.' " At the time the deeds were executed, the son had four sisters all of whom predeceased him as did his wife and only descendant. The court held that no rigid rule of construction required the sisters to survive the termination of the life estate in order for the remainder to vest in their successors. The court then concluded from a consideration of the wording of the deeds and surrounding circumstances that the grantors had not intended that the alternate remainder be contingent upon the sisters' survival of the life tenants.

*Hofing* is cited with approval in Simes, section 96, at page 195, where it is stated,

> "[T]he primary meaning of the term 'contingent' is that the future interest is subject to some condition other than the termination of

prior estates. But the word 'contingent' is also used to refer to a condition precedent that the devisee survive the period of distribution * * *.

Some courts have erroneously assumed that, if the future interest is contingent in the first sense, it is also contingent in the second sense. Thus, suppose a testator devises his estate to A for life, remainder to A's children, but if A die-without leaving any children surviving him, then to B. If A has children, the interest of B is an executory interest, and is contingent in the sense that there is a condition precedent to its taking effect in possession. Suppose B dies before A, and A dies after all his children have predeceased him. Will the property pass to B's estate? The proper answer is in the affirmative."

The devise stated that if Leta Timmons died without issue, "then in that event * * * I give devise and bequeath * * *" the limitation to Elmo, Sr., for life with remainder to the heirs of his body. In *Roper v. Finney* (1955), 7 Ill. 2d 487, 131 N.E.2d 106, and *Sloan v. Beatty* (1953), 1 Ill. 2d 581, 116 N.E.2d 375, such words of futurity were construed to indicate an intention that survival of the contingency was necessary for the property devised to pass through the person given a contingent gift in remainder. In *Hofing*, on the other hand, the conveyance stated, " 'In case there be no heirs *then* the said lands shall revert' " to the sisters, but the wording of futurity was not held to require survivorship by the sisters for property to pass through them. (Emphasis added.) (31 Ill. 2d 365, 374, 201 N.E.2d 852, 856.) As the latest supreme court pronouncement, we deem *Hofing* to be the appropriate precedent.

In *Irish v. Profitt* (1975), 28 Ill. App. 3d 607, 330 N.E.2d 861, partly because the first contingent remainder was conditioned upon survivorship, we construed a devise to also require survivorship of the life tenant as a condition of an alternate remainder. But even then, we stated that in the absence of some such indication of that intent, survivorship would not have been required.

■■■ Here, unlike in *Irish*, survivorship of the life tenant under the first limitation was not a condition of the first contingent remainder nor was there other indication of an intent to require survivorship. As the will of Sard Giles contained no residuary clause, a requirement that Elmo, Jr., survive Leta Timmons for the alternate remainder to pass would create a partial intestacy. A recognized public policy exists against creating even a partial intestacy where it is reasonably possible not to do so (*Wise v. First National Bank* (1957), 10 Ill. 2d 623, 141 N.E.2d 1). Accordingly, we do not interpret Article Third to have required Elmo S. Giles, Jr., to have survived his aunt, Leta Timmons, in order for his devisees to have taken

the alternate contingent remainder upon the failure of the first contingent remainder in the heirs of her body.

For the reasons stated, we reverse the decree of partition finding plaintiffs to have an interest in the 320-acre tract devised by Article Third of the will of Sard Giles.

Reversed.

MILLS, P. J., concurs.

Mr. JUSTICE TRAPP, dissenting:

It is agreed that the devise created a life estate in Leta Timmons with a contingent remainder in the heirs of her body, and an alternative contingent remainder for life in the testator's son, Elmo, with a final remainder in the heirs of the body of that son. It is also agreed that any interest taken by the defendants under the will of Elmo, Jr., "remained contingent upon Leta Timmons dying without issue until that actually occurred." Neither the alternative contingent life tenant, Elmo, nor the alternative contingent remainderman, Elmo, Jr., survived the initial life tenant Leta. Nevertheless, the majority holds that the remainder upon the second alternative contingent vested in Elmo, Jr., during the lifetime of the first life tenant, Leta, and passed by the will of Elmo, Jr., the defendants.

That result is achieved by a construction of the language of section 6 of "An Act concerning conveyances" (Smith-Hurd Rev. Stat. 1923, ch. 30, par. 5). It provides:

> "In cases where, by the common law, any person or persons might hereafter become seized, * * * in fee tail, * * * such person or persons, instead of being or becoming seized thereof in fee tail, shall be deemed and adjudged to be, and become seized thereof, for his or her natural life only, and the remainder shall pass in fee simple absolute, to the person or persons to whom the estate tail would, on the death of the first grantee, devisee * * *, first pass, according to the course of the common law, by virtue of such devise, * * *."

From such statutory language, it is concluded that the testator's son, Elmo, as devisee of the life estate in the second alternative contingent was a person who "might hereafter become seized in fee tail * * *." Although testator's son, Elmo, never became seized of that alternative contingent life estate, the statute is so applied that the remainder passed to Elmo, Jr., at the death of the testator's son, Elmo, as "the person or persons to whom the estate tail would, on the death of the first * * * devisee * * * in tail,

first pass, according to the common law, by virtue of such devise \* \* \*.'"

The result appears to defy the logic of the language used. Essential to the functioning of the statute is that testator's son, Elmo, became "seized" of an estate in fee tail. The term "seised" is used to express "possession of a freehold property." (Black's Law Dictionary (3d ed. 1963).) The operative language of the statute is that the person "instead of being or *becoming seized* thereof in fee tail, shall be deemed and adjudged to be, and *become seized* thereof, for his or her natural life only, and the remainder shall pass in fee simple absolute \* \* \*." (Emphasis added.) (Ill. Rev. Stat. 1923, ch. 30, par. 5.) It seems apparent that the remainder asserted to be in Elmo, Jr., is not provided by the statute until the testator's son, Elmo, becomes seized of the life estate. Since it is agreed that the remainder was in the heirs of the body of the initial life tenant, Leta, until it was ascertained that she died without issue, it is difficult to conclude that either the testator's son, Elmo, or the latter's issue, Elmo, Jr., became seized in possession of a freehold prior to the death of Leta Timmons without issue.

The thesis of the majority requires the emphasis of the word "might" in the phrase "might hereafter become seized." The word "might" is the past tense of the verb "may," which has several nuances including "have power" or "may" or "am able" or "can." (Webster's Third New International Dictionary 1396 (1971).) The same source notes that the word "might" has the auxiliary meaning "possibility in the past." (Webster's Third New International Dictionary 1432 (1971).) In such context, the language would read "in cases whereby the common law, any person \* \* \* might [have] hereafter become seized \* \* \* in fee tail."

In the majority opinion it appears that the word "might" is construed or used in the connotation of a future possibility that the testator's son, Elmo, become seized in fee tail upon the failure of the contingent remainder in the heirs of the body of Leta Timmons. By its terms, the statute functions where a person becomes seized of a fee tail. It does not, upon its face, purport to deal with contingent future seisin, or seisin which is prospective only in substitution for a failed estate. In short, there is no statutory language which served to accelerate the seisin required for the estates provided by the statute.

A second major interpretation in the majority opinion appears equally strained. We consider the statutory language "[T]he remainder shall pass in fee simple absolute, to the person or persons to whom the estate tail would, on the death of the first \* \* \* devisee \* \* \* in tail first pass, according to the course of the common law, by virtue of such devise, \* \* \*." Ill. Rev. Stat. 1923, ch. 30, par. 5.

The opinion appears to say that although the son of the testator, Elmo, never became seized of a life estate, nevertheless, he is to be

deemed "first * * * devisee * * * in tail" with a result that the remainder "first pass[ed], according to the common law, by virtue of such devise * * *" to Elmo, Jr.

By its terms, the statute does not purport to deal with a series of successive or substitutionary estates tail. By its language, it again functions when a person becomes "seized" of a freehold estate within the meaning of the statute and one cannot find any language that the statute functions without a person having become "seized" of a freehold estate.

In the language of the devise, Leta Timmons was the first devisee in tail. She was the only devisee who ever became seized of a possession of a freehold. In the language of the statute the heirs of her body were the persons to whom the estate would "first pass, according to the common law, by virtue of such devise * * *." The "course of the common law" has been stated in detail in *Frazer v. Board of Supervisors* (1874), 74 Ill. 282; *Moore v. Reddel* (1913), 259 Ill. 36, 102 N.E. 257; and *Biwer v. Martin* (1920), 294 Ill. 488, 128 N.E. 518.

The opinion in *Moroney v. Haas* (1917), 277 Ill. 467, 115 N.E. 648, does not appear to support the position for which it is cited. The beneficiary of a trust, Stockel, was to receive the income for life. A provision for distribution to her children was held to violate the rule against perpetuities and to be void. In effectuating other portions of the will, the court noted that it provided that if Stockel should die leaving no issue, the property would pass to Hill in fee. When partition was sought, Hill was dead, but the life tenant, Stockel, was living and a party-defendant. The opinion does state that if Stockel should die leaving no issue, the remainder to Hill will take effect in his heirs. The same result can have been true here if Elmo, Jr., had survived the life tenant, Leta. The opinion continued, however, stating, "[B]ut the remainder in case she [Stockel] dies leaving issue has not been disposed of and will vest in the heirs of the testatrix. Until her [Stockel's] death it cannot be known in whom the title will finally vest—whether in the heirs of James A. T. Hill or those of the testatrix." 277 Ill. 467, 473, 115 N.E. 648, 650.

While heirs generally are quite different from the specificity of the heirs of the body, the central critical point is that the determination in whom the contingent estate vests is not determined until the death of the life tenant.

The provisions of the devises here are substantially similar in contingency to those found in *Golladay v. Knock* (1908), 235 Ill. 412, 85 N.E. 649. As has been noted, Elmo, Jr., was never vested in possession of any interest in the land devised. During his lifetime there was no vesting of interest as a present fixed right of future enjoyment because the contingency that Leta Timmons die without issue prevailed.

The language of the companion and parallel devises to Leta

Timmons and the testator's son, Elmo, discloses testator's contemplation of survivorship of the initial life tenant. With reference to the failure of issue in the first life tenant, the testator said, "[A]nd in the event of the death of the said Leta Timmons without issue, then in that event * * * I give, devise and bequeath * * *." In *Roper v. Finney* (1955), 7 Ill. 2d 487, 489, 131 N.E.2d 106, the will provided that the property " 'shall, at her death, descend * * * according to the Statutes of Descent * * *.' " That opinion stated that the stated "words of futurity" disclosed an intention that the remainder interests were to vest, if at all, at the death of the life tenant.

As in *Sloan v. Beatty* (1953), 1 Ill. 2d 581, 116 N.E.2d 375, the phrase "then in that event" which provides the substitutionary gift contains an adverbial statement of time referring to the death of the life tenant. Thus, it is proper to conclude that the testator contemplated, and by his language, provided that survivorship of Leta Timmons was a requisite to the vesting of any estate in substitution.

In *Roper*, the court said:

> "Although in case of doubt courts usually favor that construction which will vest the remainder at the earliest opportunity, it is nevertheless the intention of the testator that controls. The purpose of construing a will is to give it that meaning which the words used warrant." (7 Ill. 2d 487, 491, 131 N.E.2d 106, 108.)

See also *Irish v. Profitt* (1975), 28 Ill. App. 3d 607, 330 N.E.2d 861.

The trial court determined that upon the complete failure of the contingent remainders, the testator's reversion descended to his heirs at law so that one-half of the real estate was devised to plaintiffs by the will of Leta Timmons and one-half was devised to defendants by the will of Elmo, Jr. (*Spicer v. Moss* (1951), 409 Ill. 343, 100 N.E.2d 761.) I would affirm that decree.