756

BELLEVILLE NATIONAL BANK, a/k/a Belleville National Savings Bank, Plaintiff-Appellee, *v.* MARGARET W. TRAUERNICHT, Defendant-Appellant.

Fifth District No. 82—232

Opinion filed February 18, 1983.

Weihl & Millard, Ltd., of Belleville (Donald E. Weihl, of counsel), for appellant.

Johnson & Johnson, of Belleville (P.K. Johnson, Sr., of counsel), for appellee.

PRESIDING JUSTICE HARRISON delivered the opinion of the court:

The defendant, Margaret W. Trauernicht, appeals from a final judgment of the circuit court of St. Clair County which, after a trial on the merits of the case, quieted title to certain real estate in favor of the

plaintiff, Belleville National Bank. The defendant contends first that a contingent remainder created by deed in 1913 under section 6 of the Illinois Conveyances Act (Ill. Rev. Stat. 1919, ch. 30, par. 6, current version at Ill. Rev. Stat. 1981, ch. 30, par. 5) could not be destroyed in 1919 by conveyances merging the life estate and the reversion in fee in a third party (the plaintiff's predecessor in interest). Second, the defendant asserts that the deed creating the contingent remainder precluded destruction of the contingent interest by virtue of an implied covenant. The defendant's final contention is that the deed which created the contingent remainder also created a trust sufficient to preserve the contingent interest. We affirm.

In 1913, the defendant's grandparents, William C. Penn and Margaret A. Penn, executed a deed conveying to their daughter, Gladys L. Penn, a life estate in certain real property. The deed provided that the "conveyance is made subject to the following terms, conditions and reservations, to-wit:

> First - The said grantors hereby reserve to themselves a life estate in the above described real estate to continue and exist during the joint lives of these grantors and also during the lifetime of the survivor of them; *** Second - And upon the death of both of these grantors, then and in that event, any Court having legal jurisdiction of the matter, shall appoint some competent person or corporation to act as trustee for the said grantee, and such trustee after giving a good and sufficient bond for the faithful performance of his duty as such trustee, shall thereupon have the control and management of said real estate, ***. Said trustee shall from time to time, and as often as it may practically done, pay over to the said grantee the net rent and income collected by said trustee from said real estate, during her natural lifetime; and said net rent and income shall by said trustee be paid in cash into the hands of the said grantee in person, or by draft or check payable directly to her, and not upon any written or verbal order, nor upon any assignment or transfer made by the said grantee. And at the death of said grantee said trust shall cease and be determined and said real estate shall vest in the heirs of the body of the said grantee, and in default of such heirs, said real estate shall descend to the heirs of the body of the said William C. Penn then living, according to the laws of the State of Illinois, then in force regulating descents.

> This conveyance is made by the grantors for the purpose of assuring to their said daughter Gladys Lucille Penn a fixed income, after the death of these grantors, during the remainder of

her natural life."

The parties stipulated that when William C. Penn died on January 14, 1914, his only heirs at law were Margaret A. Penn, his widow, and his children Frederick H. Penn, Eugene A. Penn, and Gladys L. Penn. William C. Penn's last will was admitted to evidence pursuant to stipulation.

On October 30, 1919, Margaret A. Penn, Eugene A. Penn, Gladys Lucille Penn, Frederick H. Penn and his wife Roxie Penn, executed a conveyance to the Belleville National Bank and Trust Company. This conveyance recited that "it is the aim, object and intention of the life tenants, Margaret A. Penn and Gladys Lucille Penn, as also the other heirs of William C. Penn, deceased, viz: Frederick H. Penn and Eugene A. Penn, to convey an absolute fee simple title to a part of said real estate, and to destroy all contingent remainders created by said deed of conveyance ***."

On September 15, 1926, Gladys Lucille Penn married S. M. Wallace and on September 2, 1927, the defendant, Margaret Penn Wallace, was born of that marriage. Gladys Penn Wallace gave birth to no other children. On September 7, 1949, Margaret Wallace married Carl Trauernicht. On December 8, 1980, Gladys Penn Wallace died.

The Belleville National Bank, successor in interest to the Belleville Bank and Trust Company, filed this action to quiet title. The defendant filed an answer and amended counterclaim and the case was submitted to the court on the exhibits, stipulations, and briefs of counsel. The trial court rendered judgment for the plaintiff and concluded that the 1919 deed "did effectively vest the fee simple title in the grantee" and "did destroy the contingent remainder in favor of the heirs of the body of Gladys Lucille Penn ***." The court also concluded that the 1913 deed did not create a trust which would preclude Margaret Penn from conveying her life estate, nor did it create a completed trust, and that no intervening estate was created to prevent destruction of the contingent remainder. The court also concluded that the reversion in the property was in the heirs of the body of William C. Penn, under the terms of the 1913 deed, rather than in the devisees under his will. The court ordered title quieted in favor of the Belleville National Bank and the defendant thereafter perfected an appeal to this court from that order.

■ The defendant's first contention on appeal is that a contingent remainder created by deed in 1913 under section 6 of "An Act concerning conveyances" (current version at Ill. Rev. Stat. 1981, ch. 30, par. 5) could not be destroyed in 1919 by conveyances merging the life estate and the reversion in fee in a third party. We disagree.

Initially, we note that although a statute prevents the destruction of contingent remainders, it did not become effective until 1921—after the conveyances in question (see Ill. Ann. Stat., ch. 30, par. 40, Historical Note, at 520 (Smith-Hurd 1969))—and was not retroactive. *Edmiston v. Donovan* (1921), 300 Ill. 521, 525, 133 N.E. 237.

As the statute does not apply to the instant case, we next consider the defendant's argument that *Frazer v. Board of Supervisors* (1874), 74 Ill. 282, is authority for the proposition under consideration. Although *Frazer* supports the defendant's contention, a substantial line of cases decided after *Frazer* held that a conditional remainder could be destroyed by the premature termination of the life estate supporting the remainder through a merger of the life estate and the reversion in fee. (See, *e.g., Edmiston v. Donovan* (1921), 300 Ill. 521, 524-25; *Brinkerhoff v. Butler* (1921), 296 Ill. 368, 370-71, 129 N.E. 742; *Lewin v. Bell* (1918), 285 Ill. 227, 230, 120 N.E. 633; *Messer v. Baldwin* (1914), 262 Ill. 48, 51, 104 N.E. 195; *Bond v. Moore* (1908), 236 Ill. 576, 591-92, 86 N.E. 386.) The rule before 1921 was that:

> "Every remainder requires a particular estate to support it, and a contingent remainder must vest during the continuance of the particular estate or *eo instanti* that it determines. (2 Blackstone's Com. 168.) If the particular estate comes to an end before the event upon the happening of which the contingent remainder is to take effect occurs, the remainder is defeated; and this is so whether the preceding estate reaches its natural termination or is brought to a premature end by merger, forfeiture or otherwise." (*Bond v. Moore* (1908), 236 Ill. 576, 591.)

The defendant argues that *Frazer* is nevertheless applicable to the instant case for two reasons. First, she contends that because *Frazer* involved estates in land which were created by deed, rather than by will, *Frazer* is distinguishable from, and therefore not necessarily overruled by, the line of cases beginning with *Bond v. Moore*. Second, the defendant argues that under the 1872 act concerning conveyances, estates fee tail constituted an exception to the general rule of merger and destructibility. (See *Bond v. Moore* (1908), 236 Ill. 576, 593.) These arguments will be considered sequentially.

Although a distinction was formerly drawn between contingent remainders created by deed and those created by will, this distinction went to whether a contingent remainder, which was to vest in some person not yet *in esse*, would be considered as in abeyance or as vested in the grantor subject to divestment upon the happening of the contingency. (See *Pinkney v. Weaver* (1905), 216 Ill. 185, 193-95, 74 N.E. 714 (abrogating the distinction just noted).) This distinction does not bear

on the facts of the case *sub judice* and consequently we find it no reason to distinguish *Frazer* from subsequent contrary cases. In any event, the different treatment of *inter vivos* and posthumous conveyances was eliminated by *Pinkney* in 1905, before any of the conveyances at issue were executed.

The defendant also argues that, under the 1872 act concerning conveyances, estates fee tail constituted an exception to the rule of merger and destructibility and that therefore *Frazer* is distinguishable from the line of contrary cases. (See *Bond v. Moore* (1908), 236 Ill. 576, 593.) This exception was short-lived, however, for in subsequent cases (*e.g., Danberg v. Langman* (1925), 318 Ill. 266, 149 N.E. 245; *Brinkerhoff v. Butler* (1921), 296 Ill. 368; *Lewin v. Bell* (1918), 285 Ill. 227), the statute was held not to preserve the contingent remainder following a fee tail when the life estate was merged with the reversion.

We therefore hold that at the time of the 1919 conveyance, *Frazer* was not the law, and we conclude that the law permitted the destruction of the contingent remainder at issue.

At this point a brief discussion of the development of the common law concerning the fee tail would aid an understanding of the issues on appeal. Under the common law prior to 1285, a gift to a grantee "and the heirs of his body," was construed by the courts as a fee simple conditional on issue being born. (*Frazer v. Board of Supervisors* (1874), 74 Ill. 282, 286, citing 2 W. Blackstone, Commentaries 110; see also Digby, History of the Law of Real Property 222-23 (5th ed. 1897) (hereinafter cited as Digby).) When the condition was performed the estate became absolute. In 1285 parliament adopted the statute of Westminister II or *de donis conditionalibus* (13 Edw. I, ch. 1, reprinted in Digby, at 226-30), which divided the fee simple conditional estate created by the words "heirs of the body," into two parts: the fee tail (from "taille," meaning cut off) and a reversion in fee simple. (Digby, at 225; *Frazer v. Board of Supervisors* (1874), 74 Ill. 282, 287.) In 1872 the Illinois legislature adopted "An Act concerning conveyances." (Ill. Rev. Stat. 1919, ch. 30, par. 1 *et seq.*; see Ill. Ann. Stat., ch. 30, par. 5, Historical Note, at 345 (Smith-Hurd 1969).) In 1919, section 6 of the Act provided that:

> "In cases where, by the common law, any person or persons might hereafter become seized, in fee tail, of any lands, tenements or hereditaments, by virtue of any devise, gift, grant or other conveyance, hereafter to be made, or by any other means whatsoever, such person or persons, instead of being or becoming seized thereof in fee tail, shall be deemed and adjudged to be, and become seized thereof, for his or her natural life only,

and the remainder shall pass in fee simple absolute, to the person or persons whom the state would, on the death of the first grantee, devisee or donee in tail, first pass, according to the course of the common law, by virtue of such devise, gift, grant or conveyance." (Ill. Rev. Stat. 1919, ch. 30, par. 6.)
Under this statute persons, who at common law after 1285 would have been seized in fee tail, instead received a life estate with the remainder in fee simple absolute to the person or persons to whom the estate tail would have passed under the common law. *Lewin v. Bell* (1918), 285 Ill. 227, 229.

Additionally, the Rule in Shelley's Case was in full force in Illinois until 1953. (Compare *Johnson v. Buck* (1906), 220 Ill. 226, 233, 77 N.E. 163, with Ill. Rev. Stat. 1981, ch. 30, par. 186.) Under the rule, " 'where the ancestor takes an estate of freehold, and in the same gift or conveyance an estate is limited, either mediately or immediately, to his heirs, either in fee or in tail, the heirs are words of limitation of the estate and not words of purchase.' " *Johnson v. Buck* (1906), 220 Ill. 226, 233.

"That rule is in force in this State in all cases of limitations of a freehold estate to one with remainder to his heirs generally, and confers the inheritance on the ancestor; but it has been abolished as to estates tail by the sixth section of the Conveyance act. *As to limitations controlled by that section, the only use made of the rule is for the purpose of determining whether by the common law a fee tail would have been created.* If it would, the person who would have been seized in fee tail is seized for her or his natural life, only, and the remainder passes in fee simple absolute to the person or persons to whom the remainder is limited." (Emphasis added.) (*Winchell v. Winchell* (1913), 259 Ill. 471, 473-74, 102 N.E. 823.)
We therefore must apply the common law rules to determine whether a fee tail was created and hence whether the statute applies.

■ Applying these principles to the 1913 deed, we hold that the grantors reserved to themselves joint life estates in the property and conveyed to Gladys L. Penn a remainder for life with a subsequent remainder over to her heirs of the body. Although the parties cited no case which applied the Rule in Shelley's Case to a remainderman's interest to merge the ancestor's remainder with that of the descendants, the appellate court recently determined that the rule does apply to such a case. (*Evans v. Giles* (1980), 80 Ill. App. 3d 270, 273, 399 N.E.2d 664, *affirmed* (1980), 83 Ill. 2d 448, 415 N.E.2d 354.) Following *Evans* we conclude that Gladys L. Penn had a remainder in fee tail which,

under section 6 of "An Act concerning conveyances," became a remainder estate for life with a remainder in fee simple to the heirs of her body. (83 Ill. 2d 448, 454.) Because Gladys L. Penn had no heirs of the body at the time of either the 1913 or 1919 conveyances, the remainder in fee simple to the heirs of her body was contingent. (*Lewin v. Bell* (1918), 285 Ill. 227, 229.)

> "The rule of the common law was that a contingent remainder of a freehold estate which waits for and depends upon the termination of the estate preceding it required a particular estate of freehold to support it, and if the particular estate came to an end before the time for vesting of the remainder the remainder would fail. The law on that subject originated from the rule that the *seisin* or feudal possession must never be without an owner, and if it was not at once parted with it remained in the devisor. That is still the law where the necessity of a preceding particular estate of freehold to support a contingent remainder has not been abolished by statute and the recipient of a benefaction of a testator may thwart his will by merging the life estate in the reversion in fee, by which the life estate comes to an end, and when the one who would be entitled to the remainder comes into being he finds that the interest designed by the testator for him was at the mercy of the life tenant and has been destroyed. The common law is still the law of this State, and where a devise comes within the terms of section 6 of the Conveyance act, the remainder being contingent until the birth of issue, it may be destroyed by the termination of the life estate through a merger with the reversion." (*Lewin v. Bell* (1918), 285 Ill. 227, 230.)

In the instant case, as of October 30, 1919, Margaret A. Penn owned a possessory life estate, Gladys Lucille Penn owned a vested remainder for life, and Eugene A. Penn and Frederick H. Penn owned the reversionary interest. (As the trial court noted, this interest was created by the 1913 deed, rather than by William C. Penn's will.) On that date, or shortly thereafter, all of these people executed a deed to the Belleville Bank & Trust Company with the express intention "to convey an absolute fee simple title *** and to destroy all contingent remainders ***." The deed conveyed the described real estate, together with "the reversion and reversions, remainder and remainders, *** and all the estate, right, title, interest, claim or demand, whatsoever, of the [sellers], either in law or equity, of, in and to the above bargained premises ***." This deed effectively conveyed all interest in the property which the grantors owned. A conveyance of the life estate, the remainder for life, and the reversion left no existing estate to support the contingent in-

terests, and these were therefore destroyed. *Danberg v. Langman* (1925), 318 Ill. 266, 270; *Messer v. Baldwin* (1914), 262 Ill. 48, 51; see also 1 Grigsby, Illinois Real Property sec. 56, at 105-06 (1948).

The defendant next contends that destruction of the contingent remainder would breach an implied covenant in the 1913 deed and therefore is impermissible. This point was not presented to the trial court and is therefore waived. See *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147, 324 N.E.2d 417.

■ The defendant also argues that the 1913 deed created a trust which prevented a transfer of the property or the destruction of the contingent remainder. In *dictum*, the supreme court in *Lewin v. Bell* noted that "the only method by which a testator devising such remainders can preserve them and prevent his intention being frustrated and his will defeated is a resort to a trust." (*Lewin v. Bell* (1918), 285 Ill. 227, 230.) Such a trust would support the remainder by holding a legal estate until the happening of the contingency. (See *Bond v. Moore* (1908), 236 Ill. 576, 592.) Unless the trust actually existed and held the legal title, the contingent remainder would still lack the supporting estate and hence would be destroyed by merger. (See *Fuller v. Black* (1921), 298 Ill. 351, 353-54, 298 N.E. 351.) In the instant case, as in *Fuller*, no trustee was actually appointed because the merging conveyances were executed before the contingencies on which the trusts to commence had occurred. The trust provisions in the deed failed to transfer to an existing trust the legal title to the property. Before the trust which was contemplated in the deed would have taken effect the conveyance destroying the defendant's interest was executed. We therefore hold that the destruction of the contingent remainder in the instant case was not prevented by a trust because none existed at the time of either conveyance. Accordingly, the defendant's contingent interest was destroyed by the 1919 conveyance to the plaintiff's predecessor in interest.

Similarly, because the trust was not in existence at the time of the 1919 conveyance, we find no merit in the defendant's assertion that the conveyance was in breach of the trust.

We therefore affirm the judgment of the circuit court.

Affirmed.

WELCH and KASSERMAN, JJ., concur.